**In re J.J.Z., Appellant.**

**In re M.A.Z., Appellant.**

**In re B.S., Appellant.**

**In re S.C., Appellant.**

**In re K.S., Appellant.**

**In re R.S., Appellant.**

Nos. 90–FS–839, 90–FS–840 and 90–FS–861 to 90–FS–864.

District of Columbia Court of Appeals.

Argued Nov. 7, 1991.
Decided Aug. 16, 1993.

Arthur J. Whalen, Jr., for appellants J.J.Z. and M.A.Z.

George Dreos, for appellants B.S., S.C., K.S., and R.S.

Martin B. White, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for the District of Columbia.

Al Gonzalez, for appellee M.M. in Nos. 90–FM–839 and 90–FM–840.

Kenneth Rosenau, for appellee A.S. in Nos. 90–FM–861, 90–FM–862, 90–FM–863, and 90–FM–864.

Before TERRY, FARRELL and WAGNER, Associate Judges.

WAGNER, Associate Judge:

These consolidated appeals challenge the trial court's dismissal of neglect petitions filed pursuant to D.C.Code § 16–2301 (1989), upon motions made by the District of Columbia, over the objection of the court appointed guardians *ad litem* for six minor children. The government represented that its evidence was insufficient to meet its burden of proof in the cases involving J.J.Z. and M.A.Z. In the cases involving B.S., S.C., K.S., and R.S., the government cited as reasons for dismissal the substantial positive changes in the children's mother's living arrangements and lifestyle and her family's willingness to assume responsibility for the care of the children should their mother, A.S., be incarcerated. The principal issue raised by all appellants is whether the trial court erred in dismissing the petitions without first independently determining whether pretrial dismissal was in the children's best interests. We hold that where the government seeks to dismiss a neglect petition based upon its good faith determination that its proof is insufficient to sustain the charges, the trial court must grant the motion. Further, we hold that where the government seeks to dismiss the petition over the objection of the guardian *ad litem* for reasons other than a lack of proof of neglect, the court must make an appropriate inquiry, including an evidentiary one if necessary, to determine whether the best interests of the child will be served by dismissal. We conclude that the hearing in the case of B.S., S.C., K.S., and R.S. was sufficient and that the trial court did not abuse its discretion in dismissing the petition under the circumstances. Accordingly, we affirm.

## I. *Factual Background*

### A. *J.J.Z. and M.A.Z.*

On December 1, 1989, K.Z., a six month old infant, was admitted to Children's Hos-

pital suffering from "a fracture [sic] left humerus and multiple old bone injuries which are suggestive of non-accidental trauma." The Corporation Counsel filed petitions in the Superior Court alleging that K.Z. and the infant's siblings, J.J.Z., born December 25, 1986, and M.A.Z., born June 5, 1988, were neglected and citing as reasons therefor K.Z.'s injuries and their father's inability to discharge his parental responsibilities because of alcoholism. The three children were placed in shelter care in custody of the Department of Human Services pending trial.[1] At a pretrial hearing, a probation officer reported that skeletal examinations for J.J.Z. and M.A.Z. revealed no injuries or fractures. That same day, the court entered an order for conditional release of the children to the custody of their mother, M.M. The order precluded the father from having contact with the children when drinking and provided for his participation in an alcohol abuse treatment program. The mother was ordered to continue individual therapy, and both parents were ordered to refrain from physically disciplining the children.

On the first scheduled trial date, the government sought to proceed only with the petition for K.Z. by way of a stipulation of neglect from the father. After some question about the substance of the stipulation, the court (Judge Peter Wolf) declined to accept it because the trial involving the child's mother would proceed on essentially the same proof. The government represented that it did not want to go forward with the cases for J.J.Z. and M.A.Z. in any event because it had no proof of any nexus between the father's drinking and any injury to these children, nor evidence that they were otherwise injured. Essentially, the government was of the view that the fact that K.Z. had been abused, standing alone, was insufficient to support an adjudication of neglect under D.C.Code § 16–2301(9)(E) in the absence of evidence that the other children were in imminent danger of being abused. The government also expressed the view that if K.Z. were found to be neglected, the family could benefit from monitoring or services provided pending the disposition in K.Z.'s case.

After a trial before another judge, K.Z. was found to be neglected by both parents under D.C.Code § 16–2301(9)(A) (a child abused by his parent).[2] At the next hearing before Judge Wolf, the government renewed its motion to dismiss the petitions related to J.J.Z. and M.A.Z. for the reasons given at the prior hearing. The guardian *ad litem* (GAL) for the children opposed the motion and requested the court to allow him to proceed in lieu of the government. The GAL argued that the District of Columbia had a special duty to protect abused and neglected children and that the court, as *parens patriae*, had the inherent power to reject an arbitrary dismissal of a neglect petition. He urged the court to proceed to a hearing on the merits and to authorize the GAL to continue with the petitions if the District should fail to do so.

In addition to the legal arguments in support of the motion, the GAL proffered as evidence that the facts known to the government at the time of the oral motion to dismiss which would support a finding of

---

1. The statute governing neglect proceedings provides for shelter care placement prior to a factfinding or dispositional hearing under certain circumstances. The statute reads in pertinent part as follows:

> A child shall not be placed in shelter care prior to a factfinding hearing or a dispositional hearing unless it appears from available information that shelter care is required—
> (1) to protect the person of the child, or
> (2) because the child has no parent, guardian, custodian, or other person or agency able to provide supervision and care for him, and the child appears unable to care for himself and that

> (3) no alternative resources or arrangements are available to the family that would adequately safeguard the child without requiring removal.

D.C.Code § 16–2310(b).

2. The government represented that it had sought a finding of neglect of K.Z. pursuant to D.C.Code § 16–2301(9)(A), (B), (C) and (F), but recognizing that it did not have sufficient evidence to support a finding under subsection (C), it withdrew the allegation at the close of its evidence. Although the case was submitted for consideration under subsections (A), (B) and (F), the court found neglect only under subsection (A) of the statute.

neglect included the following: (1) the finding that the parents of J.J.Z. and M.A.Z. abused their sibling, K.Z.; (2) the unexplained, severe head injuries sustained some seven years before by S.J.M., a half-sibling to the children, while in the mother's care;[3] (3) the mother's suicidal thoughts, which required mental health intervention, and her unwillingness to learn much needed parenting skills, according to the community workers; and (4) the mother's failure to disclose voluntarily that S.J.M. was her daughter and her inconsistent explanations for the injuries which caused S.J.M.'s condition. After submission of memoranda by the parties, the trial court granted the government's motion to dismiss the petitions without opinion. The GAL noted these appeals on behalf of J.J.Z. and M.A.Z.

## B. *B.S., S.C., K.S.* and *R.S.*

On February 10, 1989, the Corporation Counsel's office filed neglect petitions for B.S., S.C., K.S., and R.S., the children of A.S., alleging that "[they are] without proper parental care and control necessary for [their] physical, mental and emotional health, and the deprivation is not due to the lack of financial means of [their] mother." Specifically, it was alleged that the children's home was filthy, that they had no food and little furniture, and that various items of drug paraphernalia were observed there. Pending further initial hearing, the trial court entered orders for conditional release of the children to reside with their maternal grandmother or maternal aunt. On February 13, 1989, the court placed the children with their maternal aunt. Subsequently, the children were placed in the custody of the Department of Human Services for shelter care placement.

After trial commenced on the first scheduled trial date, the government moved to amend the petitions because it had discovered that the mother, A.S., had been arrested for distribution of cocaine. The court granted the motion to amend and a motion for mistrial. Thereafter, the government filed an amended petition which included the arrest information. On the next trial date, the government made an oral motion to dismiss, representing that the mother had completely changed her life for the better. Specifically, the government represented that A.S. had moved back in with her parents and was: (1) attempting to maintain employment; (2) testing drug free; (3) keeping in touch with her social worker; and (4) doing things for her children. A.S.'s attorney proffered that the co-defendant in A.S.'s pending drug case would testify that it was he, and not A.S., who sold the drugs. Further, counsel for the government reported that A.S.'s family had expressed a willingness to care for the minor children if the criminal charges against A.S. resulted in her incarceration. In response to the court's inquiry, counsel for the government stated that she felt they had made an adequate investigation before moving to dismiss the case. Counsel for the mother supported the motion.

The GAL for the children opposed dismissal, contending that A.S. was involved extensively in drugs. The GAL urged that the court proceed with a hearing on the merits and authorize the GAL to proceed if the District should decline to do so, or alternatively continue the case until after completion of the criminal prosecution. The trial court, relying on the rationale set forth in *In re D.B.*, 117 Daily Wash.L.Rptr. 665 (April 4, 1989), dismissed the petitions.[4]

---

3. S.J.M. was about sixteen months old when the injuries were sustained. According to the GAL for M.A.Z. and J.J.Z., a report on S.J.M.'s condition indicates that the child, who was by then eight years old, is blind, deaf, non-verbal and uncoordinated, and she is confined to a specially equipped wheelchair at D.C. Village. He reported that the child was healthy at birth.

4. In *D.B.*, under similar circumstances, the Superior Court (Judge Geoffrey Alprin) ruled, af-

ter a well-reasoned analysis, essentially as follows:

> Since only the Corporation Counsel is responsible for filing and presenting evidence in support of neglect petitions, it follows that when that office determines that its evidence is insufficient to meet its burden of proof it need not and, in fact, should not proceed to trial. Where the statute obligates the government to produce evidence in support of its allegations, the government unquestionably is

The GAL filed a motion for reconsideration in which he argued, *inter alia*, that since the GAL objected to dismissal, the court should hold an evidentiary hearing to determine whether the children were neglected. He contended that there was strong evidence of the mother's failure to provide proper care for the children and that it was not in the children's best interest to be returned to her at this time. The court denied the motion, and these appeals followed.

## II.

Appellants argue that the trial court erred in dismissing the neglect petitions pretrial, on motion of the District of Columbia, over the objection of the guardians *ad litem* for the children. The three principal reasons they advance for their position are that: (1) the civil nature of the proceeding forecloses the argument that dismissal is supportable as an exercise of prosecutorial discretion; (2) the *parens patriae* responsibility of the trial court and the guardian *ad litem* requires both to ascertain and act in the best interest of the children in spite of the government's decision not to proceed; and (3) Super.Ct.Neg.R. 23 provides authority for the court to determine whether dismissal is in the interest of justice. The District and the children's mothers contend that the applicable statute vests in the Corporation Counsel exclusive authority to file and control the proceedings in a manner akin to prosecutorial discretion, absent bad faith, wrongdoing, or some exceptional circumstances. They also respond that Super.Ct.Neg.R. 23 does not require the Superior Court to make an independent determination of the merits of the District's decision to dismiss a neglect petition and that

the legislature has vested in the executive branch, in its role as *parens patriae*, the primary authority to determine whether to proceed in neglect cases. We examine appellants' claims and the opposing arguments after a preliminary review of some of the controlling statutory provisions.

### A. *The Statutory Framework*

The District is correct in pointing out that by statute the Corporation Counsel of the District of Columbia has the exclusive authority to file a neglect petition. D.C.Code § 16–2305(c) (1989).[5] The extent to which others may participate in initiating that process is specified and limited by statute. While any person may make a complaint alleging neglect, that complaint must be referred to the Director of Social Services for a "preliminary inquiry to determine whether the best interests of the child or the public require that a petition be filed." D.C.Code § 16–2305(a). If the Director refuses to recommend the filing of a neglect petition, the complainant may request a review of the facts by the Corporation Counsel. D.C.Code § 16–2305(c). "Any decision of the Corporation Counsel on whether to file a petition shall be final." *Id.* Although any person with knowledge of the facts or informed of them may sign a petition, each neglect petition must be prepared by the Corporation Counsel. D.C.Code § 16–2305(b), (c). The District must be a party to any neglect proceeding, D.C.Code § 16–2305(f), and only the District is required to present evidence in support of the petition. D.C.Code § 16–2316(a).

Contrary to appellants' contention, the statute does not authorize the guardian

under a duty to evaluate the available and admissible evidence before trial. When the government determines that it cannot sustain its burden based on such an evaluation, it is not an appropriate judicial branch function for the court to substitute its own evaluation of the evidence in order to rule on the government's resulting motion to dismiss. (Footnotes omitted).

5. D.C.Code § 16–2305(c) provides:
 Each [neglect] petition shall be prepared by the Corporation Counsel after an inquiry into

the facts and a determination of the legal basis for the petition. If the Director of Social Services has refused to recommend the filing of a delinquency or neglect petition, the Corporation Counsel, on request of the complainant, shall review the facts presented and shall prepare and file a petition if he believes such action is necessary to protect the community or the interests of the child. Any *decision of the Corporation Counsel on whether to file a petition shall be final.*

*ad litem,* who must be appointed by the court to represent the child's best interest in every neglect proceeding pursuant to D.C.Code § 16–2304(b)(3), to file neglect petitions or to maintain such proceedings independently. The GAL is required to be an attorney who "shall in general be charged with the representation of the child's best interest." D.C.Code § 16–2304(b)(3). The statute contemplates an advocacy role for the GAL. *S.S. v. D.M.,* 597 A.2d 870, 875 (D.C.1991) (citing REPORT TO THE COUNCIL OF THE DISTRICT OF COLUMBIA FROM THE COMMITTEE ON THE JUDICIARY, TITLE IV, BILL 2–48, THE PREVENTION OF CHILD ABUSE AND NEGLECT ACT OF 1977, at 16 (Mar. 29, 1977)). There may also be some overlapping fact-finding function for the guardian *ad litem* to perform. *Id.* at 877. However, nowhere does the statute provide expressly or implicitly for the GAL to pursue a neglect petition independent of the Corporation Counsel.[6] The GAL represents the child but is not accorded independent party status. *See* D.C.Code § 16–2304(b)(1), (3).

This statutory scheme clearly shows that at least the initial decision to file a neglect petition rests exclusively with the District through its Corporation Counsel, who has wide discretion in making that determination, and that the District must be a party to the neglect proceeding. D.C.Code § 16–2305(c), (f). This statute also dispels the notion that the GAL may proceed independently in a neglect proceeding filed pursuant to D.C.Code § 16–2305. However, resolution of these preliminary questions is not dispositive of the ultimate one raised by these appeals, *i.e.,* whether, having filed a neglect petition, the Corporation Counsel has authority to dismiss it without an independent determination by the court that dismissal is in the child's best interests. The statute contains no provision expressly addressing this question, to which we turn

next in light of the issues framed by the parties.

### B. *The Role of Prosecutorial Discretion In Dismissal Decisions*

The District contends that implicit in its exclusive petitioning authority is the power to dismiss a petition which it later determines to be unjustified. It would be anomalous, the District argues, to reserve to it the exclusive authority to determine whether to file the petition and the primary responsibility for presenting supporting evidence, yet require it to proceed to trial when it believes in good faith that the evidence it has gathered is insufficient to support the allegations.[7] Although conceding that such proceedings are not criminal in nature, the District contends that they are analogous to criminal prosecutions, thereby justifying placing the power to maintain or to withdraw neglect charges within the discretion of the Corporation Counsel as the responsible state official, rather than with a private party. Appellee, A.S., makes similar arguments.[8] The District also suggests that policy considerations, particularly the necessity for the government to allocate scarce resources, provide some justification for the Corporation Counsel's control over dismissals undertaken in good faith. Appellants contend that the civil nature of the proceeding precludes any claim that this is an area where prosecutorial discretion forecloses judicial scrutiny.

This court has distinguished neglect proceedings from criminal prosecutions. "Neglect proceedings are remedial and focus on the child; they are critically different from criminal prosecutions which are primarily concerned with the allegedly abusive parent." *In re S.G.,* 581 A.2d 771, 775 (D.C.1990). Such cases are not brought to

---

6. In contrast, the statute specifically authorizes the GAL, as legal representative for the child, to file a proceeding to terminate parental rights after an adjudication of neglect by the court. D.C.Code § 16–2354(a).

7. In these cases there is no contention that the government acted in bad faith or for some improper purpose. Therefore, we need not consid-

er the procedure and criteria for dismissal where such allegations are made.

8. However, A.S. contends that the proceedings are not strictly civil, but rather quasi-criminal under a statutory scheme which vests power to prosecute or not solely in the Corporation Counsel. To the extent necessary for our decision, we cover these points in the opinion.

punish the parent or child. Rather, they are brought ordinarily because the parent is not willing or able to fulfill parental responsibilities, thereby requiring government intervention to protect the child's best interests. *See* D.C.Code § 16–2301(9).[9] The burden of proof in such cases is by a preponderance of the evidence rather than beyond a reasonable doubt as required in a criminal case. D.C.Code § 16–2317(c)(2); *In re S.K.*, 564 A.2d 1382, 1389 (D.C.1989); *In re B.K.*, 429 A.2d 1331, 1333 (D.C.1981). Although adjudications of neglect involve determinations that parents have engaged in seriously unacceptable behavior, the orders in such cases are not convictions. *See* D.C.Code § 16–2317(c)(2). Nevertheless, the consequences, as appellees point out, involve governmental intrusions into the fundamental and constitutionally protected right of a natural parent to raise his or her child. *See B.K., supra*, 429 A.2d at 1334 (quoting *In re J.S.R.*, 374 A.2d 860, 863 (D.C.1977)). Thus, the neglect statute, which controls the manner in which that intrusion can occur, affords protections to the parent and child similar to those made available to a criminal defendant. *See, e.g.*, D.C.Code § 16–2304(a), (b)(1) (right of parent and child to counsel, appointed by court, upon showing of financial need). We have also recognized that in certain areas, precedents from criminal cases can provide guidance in resolving issues in neglect proceedings. *S.G., supra*, 581 A.2d at 775 (joinder and severance issues). This appears to be particularly appropriate in a proceeding where the statute vests in the executive branch of the government, through its Corporation Counsel, the sole responsibility for preparing and filing the neglect petition, the requirement to be a party to any such proceeding, and the responsibility to present evidence in support of the petition, a role analogous to that of a prosecutor in a criminal case. *See* D.C.Code §§ 16–2305(c), (f), –2316(a).[10]

In spite of the civil nature of the proceedings, the prosecutorial function explicitly reserved to the Corporation Counsel by statute, supports the implicit, concomitant authority of the designated governmental official to exercise discretion in determining prior to trial whether to proceed with any petition which he deems to be unsupportable.[11] Absent a good faith belief that

---

9. The term "neglected child" is defined in the D.C.Code as one:

(A) who has been abandoned or abused by his or her parent, guardian, or other custodian; or
(B) who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or other custodian; or
(C) whose parent, guardian, or other custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity; or
(D) whose parent, guardian, or custodian refuses or is unable to assume the responsibility for the child's care, control or subsistence and the person or institution which is providing for the child states an intention to discontinue such care; or
(E) who is in imminent danger of being abused and whose sibling has been abused; or
(F) who has received negligent treatment or maltreatment from his or her parent, guardian, or other custodian.

D.C.Code § 16–2301(9)(A)–(F).

10. In contrast, the GAL may oppose the petition on behalf of the child if the GAL believes it to be in the child's best interests. *See* D.C.Code § 16–2304(b)(3). As advocate for the child, the GAL "forms an opinion, either in consultation with the child or based on his or her own analysis, about the disposition which would promote the child's best interests and advocates that position before the court." *S.S., supra*, 597 A.2d at 875. Of course, when the GAL is appointed as a "neutral fact-finder, the attorney's duties are to investigate the details of the case and to prepare a report summarizing the relevant facts for the presiding judge; as a factfinder, the attorney does not recommend a particular disposition." *Id.*

11. In a criminal case, as long as the prosecutor has probable cause to believe the defendant committed the offense, whether to prosecute and the charge to bring, rest generally in his or her discretion. *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); *Fedorov v. United States*, 600 A.2d 370, 376 (D.C.1991) (en banc).

Courts are properly hesitant to examine the government's decision to prosecute because that decision "is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence

the allegations of the petition are supportable by the evidence, the Corporation Counsel cannot discharge his responsibility under D.C.Code § 16–2316(a). Moreover, the Rules of Professional Responsibility preclude an attorney from knowingly advancing a claim unsupportable by existing law, absent a good faith argument for its extension, modification, or reversal. D.C.Bar R. 3.1; DR 7–102(A)(2); *see also* D.C.Bar.R. 3.8(b), (c). In light of these considerations and the statutory scheme above described, we hold that when the government seeks to dismiss a neglect petition pretrial because it lacks sufficient evidence to support the petition, its motion must be granted even over the objection of the GAL, absent a claim of bad faith, and the GAL has no authority to proceed with the petition independently.

## C. *The Impact of the Court's Role as Parens Patriae*

■ Appellants argue that nonetheless the court, as *parens patriae,* has the power to inquire into the merits of the government's determination that the neglect petition is not supported by the available evidence or that a change of circumstances warrants dismissal. Appellee, A.S., argues that the court's *parens patriae* role comes into play only after an adjudication, a point with which we cannot agree. The court's role as *parens patriae* in neglect proceedings is well established in this jurisdiction and elsewhere. *See In re O.L.,* 584 A.2d 1230, 1232–34 (D.C.1990); *S.G., supra,* 581 A.2d at 779; *S.K., supra,* 564 A.2d at 1388; *People ex rel. G.S.,* 820 P.2d 1178, 1180 (Colo.App.1991); *see also Wentzel v. Montgomery General Hospital, Inc.,* 293 Md. 685, 447 A.2d 1244, 1253 (Md.App.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 790, 74 L.Ed.2d 995 (1983).[12] This historic concept allows the courts having jurisdiction of a case involving minor children to provide the relief necessary to protect the best interests of the child. *Wentzel,* 447 A.2d at 1253; *In re Baby M.,* 217 N.J.Super. 313, 525 A.2d 1128, 1133 (Ch. Div.1987). The court's *parens patriae* responsibility necessarily begins well in advance of any adjudication of neglect under our statute. In this jurisdiction, prior to any factfinding hearing leading to an adjudication of neglect, the court has statutory authority, *inter alia,* to remove the child from the home and to place the child in shelter care under certain specified conditions, if necessary to protect the child, and to prescribe a schedule for visitation by the parents. D.C.Code §§ 16–2310(b), (d), –2312. At any time following the filing of the petition, the court on its own motion may order a physical or mental examination for the child. D.C.Code § 16–2315. In reposing such powers in the court, the legislature could not have intended to strip the court of its inherent *parens patriae* authority to act in the best interest of the child within that statutory framework. *See O.L., supra,* 584 A.2d at 1233. That does not mean that the concept can substitute for the procedures enacted by the legislature to achieve the child's best interest. *See In re C.A.P.,* 356 A.2d 335, 344–45 (D.C.1976). The *parens patriae* power must be exercised in proper circumstances and within statutory constraints. *Id.* at 344. However, there is neither authority nor any logical reason for upholding A.S.'s position that the court's *parens patriae* role is deferred until after an adjudication of neglect.

■ The fact that the statute also places within the power of the executive branch, through the Corporation Counsel, *parens patriae* responsibilities to the child

---

value, the Government's overall enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."
*Fedorov,* 600 A.2d at 376 (quoting *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985)). The prosecutor's discretion in this regard is not without constraints. *Id.* However, there is a presumption that a prosecution is undertaken in good faith. *Id.* at 377.

**12.** "The words '*parens patriae,*' meaning 'father of the country,' refer to the State's sovereign power of guardianship over minors and other persons under disability". *Wentzel, supra,* 447 A.2d at 1253 (citing 67A C.J.S. *Parens Patriae,* at 159 (1978); BLACK'S LAW DICTIONARY 1003 (5th ed. 1979).

does not dictate a contrary result. In neglect proceedings, both the court and the Corporation Counsel have a *parens patriae* role which requires each to act to assure the best interest of the minor child at every stage of the proceeding. *See In re J.J.*, 142 Ill.2d 1, 153 Ill.Dec. 239, 242, 566 N.E.2d 1345, 1348 (1991); *In re A.F.*, 234 Ill.App.3d 1010, 602 N.E.2d 480, 483 (1 Dist.1991). The question is whether and to what extent these dual roles provide a basis for the court to look behind the Corporation Counsel's evaluation of the merits of the case and that official's pretrial decision to dismiss for lack of evidence or for other reasons. As to the Corporation Counsel's decision to dismiss based on insufficiency of the evidence, we perceive no basis to conclude that the court's *parens patriae* role should override a decision which the statutory scheme clearly vests in the Corporation Counsel.[13] *See C.A.P., supra,* 356 A.2d at 344–45. Therefore, where as in the cases of J.J.Z. and M.A.Z., the Corporation Counsel makes a motion to dismiss based on insufficient evidence and has made a good faith determination that it cannot establish the allegations of the petition, in the absence of an objection based on a lack of good faith, dismissal is appropriate. *See D.B., supra,* 117 Daily Wash.L.Rptr. at 670.

█ A motion by the Corporation Counsel to dismiss a neglect petition for reasons other than insufficiency of the evidence, as in the cases of B.S., K.S., S.C. and R.S., raises different considerations. In such a case, the government does not claim that its action is not maintainable due to insufficient evidence or that the child is not neglected, but rather that other reasons prompt the government not to proceed. In this area, the trial court can exercise the *parens patriae* role without intruding into areas reserved exclusively to the Corporation Counsel. Thus, the trial court may

review such motions to dismiss. The government's argument of changed circumstances is in reality an argument that the parent has been rehabilitated and not that the neglect, for which it does not disclaim supporting evidence, has ceased. The fact that the parent has removed herself from an environment that facilitated the neglect and has changed her lifestyle by the time of the factfinding hearing does not alter the fact that neglect may have occurred. Under these circumstances some further inquiry into the child's best interests is warranted.

The stated purpose of the neglect rules is "to provide for the just determination of every neglect proceeding." Super.Ct.Neg.R. 2. Moreover, this court has recognized the longstanding principle that "in a civil proceeding predicated on alleged child neglect or abuse, the best interest of the child is the paramount consideration.... Neglect statutes authorizing state intervention on a child's behalf are remedial, and they should be liberally construed to enable the court to carry out its obligation as *parens patriae.*" *S.G., supra,* 581 A.2d at 778. As stated earlier, we discern no statutory impediment to judicial scrutiny on non-sufficiency grounds, as we do for questions of evidentiary sufficiency, to pursue the petition. Additionally, "one cannot determine whether a child's welfare requires the intervention of the state 'by simply examining the most recent episode.'" *O.L., supra,* 584 A.2d at 1233 (citation omitted). Some inquiry about the past and present are therefore essential. In the cases of B.S., S.C., K.S. and R.S., the Corporation Counsel's motion to dismiss was not based on insufficient evidence, but rather on alleged changed circumstances in the mother's behavior and lifestyle. Under such circumstances, the trial court's inquiry must take into account the best interests and welfare of the child.[14] In so doing, it

---

13. See discussion in Part II.A., *ante.*

14. Former Neglect Rule 23 (the predecessor of the current Super.Ct.Neg.R. 18), which was in effect at the times pertinent to these appeals, is not in conflict with the above proposition. It permits the trial court to dismiss a petition on a motion made by a non-governmental body "if such action is in the interests of justice and the welfare of the child." Super.Ct.Neg.R. 23. The trial court must determine if dismissal is warranted in the child's interest, not that of the parents.

should conduct such inquiry as may be necessary to determine that the best interest of the child will not be compromised by dismissal of the petition, while giving due weight to the judgment of the petitioning agency.

Cases from other jurisdiction support this approach for various reasons. In Illinois, where both the State's Attorney and the court are responsible for ensuring the best interests of a minor, the Supreme Court of that state held that the circuit court had not only the authority, but the duty, to determine whether the best interests of the minor, the minor's family, and the community would be served by the State's Attorney's motion to dismiss the petition. *J.J., supra,* 153 Ill.Dec. at 243, 244, 566 N.E.2d at 1349, 1350. The GAL for the three minors objected to dismissal. *Id.* at 241, 566 N.E.2d at 1347. The State's Attorney argued that, as the real party in interest, the decision to proceed or not was a matter of executive discretion. *Id.* at 1348. Observing that neglect proceedings are civil in nature, the Illinois court rejected the notion that the State's Attorney had the same wide discretion that it has in criminal prosecutions. *Id.* at 242–43, 566 N.E.2d at 1348–49. Most important to the court's decision was that the controlling statute provided that " 'the court may direct the course of [neglect proceedings] so as promptly to ascertain the jurisdictional facts and to gather fully information bearing upon the current condition and future welfare of persons subject to [the Juvenile Court] Act.' " *Id.* at 243, 566 N.E.2d at 1349 (quoting Ill.Rev.Stat.1987, ch. 37, par. 801–2(2)). The Illinois court was persuaded that only by holding a hearing on the merits to determine whether dismissal was in the best interest of the minor could the court fulfill the responsibility imposed by the quoted statutory provision. *Id.*

In *G.S., supra,* it was the children's grandmother who opposed dismissal of a dependency and neglect petition for her two grandchildren in spite of the stipulation reached by the GAL, the Department of Social Services and the children's father. *Id.* at 1179–80. Acknowledging that the state is the exclusive party to file and prosecute neglect petitions, the Colorado court observed that once filed, "the trial court is not required to dismiss the petition merely because the state chooses, for any reason, not to pursue the proceedings." *Id.* at 1180. The basis for that conclusion was that the GAL had the affirmative duty to participate in the proceedings to the extent necessary to represent the children's best interest. *Id.* However, the court held that the grandmother, a private intervenor, had no similar statutory responsibility, and therefore, no entitlement to the same status as the GAL, the child's representative. *Id.* at 1181. Therefore, the court found that no evidentiary hearing was necessary before granting dismissal "so long as its order of dismissal did not constitute an abuse of discretion." *Id.*

In looking to these cases for guidance, we are mindful of the differences in our statutory requirements. In Illinois, parties other than the government are authorized to file neglect petitions.[15] Therefore, we do not find these cases persuasive authority for determining whether dismissal is required where the entity solely responsible for the prosecution determines in its discretion and in good faith that its evidence is insufficient to support the petition. On the other hand, although the District of Columbia has no provision in its neglect statute requiring the court to "gather information bearing upon the current condition and future welfare of persons subject to [the Juvenile Court] Act," *see J.J.,* 153 Ill.Dec. at 243, 566 N.E.2d at 1349, there is no statutory impediment to its *parens patriae* role of assuring the child's best interest where the

---

**15.** *See also Care and Protection of Benjamin,* 403 Mass. 24, 525 N.E.2d 418 (1988). In *Benjamin* the court allowed the child's father to continue a care and protection proceeding even though the Department of Social Services represented that it was no longer needed. *Id.* at 419–20. The court decided that considering the object of the proceeding, the care and protection of the child, the determination was for the judge. *Id.* at 420. As the Corporation Counsel points out, the statute in Massachusetts, unlike our own, allows parties other than the government to file petitions for the care of the child. *Id.*

Corporation Counsel makes no good faith claim that the allegations of neglect are not supportable. Accordingly, we do find persuasive under such circumstances the cases from other jurisdictions which require that the court make an appropriate inquiry to determine whether dismissal is in the child's best interests. *Id.* at 243, 566 N.E.2d at 1349.

In Colorado, as in the District of Columbia, only the state can file neglect petitions. *In re R.E.*, 729 P.2d 1032, 1033 (Colo.App. 1986). Nevertheless, the Colorado court apparently requires an inquiry into the merits of the underlying claim of neglect whenever the GAL, who has an affirmative duty to participate in the proceedings, objects to dismissal. *G.S., supra,* 820 P.2d at 1180.[16] We are not persuaded that a full factfinding hearing on the neglect petition, *see* D.C.Code §§ 16–2316, –2317, is appropriate in order to resolve the motion to dismiss even over the objection of the GAL. That would defeat the purpose of efforts to dismiss and reunify the family, if in the best interest of the child, prior to adjudication. However, the inquiry must be sufficient for the court to ascertain whether dismissal is in the child's best interest, and the court is not precluded, in its discretion, from hearing evidence to the extent necessary to discharge its responsibility.

 In the case of B.S., S.C., K.S., and R.S., the record discloses an adequate inquiry and that the trial court did not abuse its discretion in granting dismissal. The court had before it the facts surrounding the claim of neglect and the change of circumstances in the mother's living arrangements, including a move to her own mother's home. A child care arrangement with relatives was available if the mother could not carry out her responsibility. The court inquired of the Corporation Counsel whether she had conducted an adequate investigation of the facts before moving to dismiss, and she responded that she did. The court considered in addition the representations of facts made by the GAL and the legal arguments of the parties, includ-

ing those presented in supplemental briefing. On this record, the inquiry was adequate, and we find no abuse of discretion in the trial court's decision granting dismissal.

For the foregoing reasons we affirm the orders of the trial court dismissing the petitions.

*Affirmed.*

---

**16.** For objections by intervenors such as a grandparent, by contrast, the Colorado court does not deem such a full inquiry to be required. *Id.* at 1181.