## In re L.H. and L.H.

### F.H. (Mother), Appellant.

### Nos. 92–FS–352, 92–FS–428.

District of Columbia Court of Appeals.

Argued Nov. 17, 1993.
Decided Dec. 20, 1993.

Robert E. Richardson, Washington, DC, for appellant.

Denise L. Wiktor, Washington, DC, for appellees.

Joel G. DeJesus, with whom Michael E. Ward and Mary M. Shaffer, Washington, DC, were on the brief, for amicus curiae, the National Ass'n of Counsel for Children.

John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Mary L. Wilson, Asst. Corp. Counsel, Washington, DC, filed a Memorandum in Lieu of Brief, for the District of Columbia.

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and GALLAGHER, Senior Judge.

FARRELL, Associate Judge:

On these appeals from the termination of appellant's parental rights, the only issue necessitating a published opinion is appellant's claim that a court-appointed guardian *ad litem* is not statutorily authorized to file a motion to terminate parental rights (a TPR motion) following an adjudication of neglect, and that a contrary reading of the statute would violate constitutional due process.[1] We reject this as well as appellant's remaining contentions, and affirm.

**I.**

■ The two statutory provisions which, we conclude, answer the issue of statutory construction appellant poses are as follows. Both were enacted as part of the Prevention of Child Abuse and Neglect Act of 1977 (PCANA).[2] D.C.Code § 16–2304 (1989) provides, in subsection (b)(3):

> The Superior Court shall in every case involving a neglected child which results in a judicial proceeding, including the termination of the parent and child relationship pursuant to [D.C.Code §§ 16–2351 through –2365], appoint a guardian ad litem who is an attorney to represent the child in the proceedings. The guardian ad litem shall in general be charged with the representation of the child's best interest.

D.C.Code § 16–2354(a) in turn states who may initiate a proceeding to terminate the parent and child relationship: "A motion for the termination of the parent and child relationship may be filed by the District of Columbia government or by the child through his or her *legal representative*" (emphasis added).[3]

■ Basic principles of statutory construction dictate that the "legal representative" referred to includes a court-appointed guardian *ad litem.*

The primary rule of statutory construction is that the intent of the legislature is to be found in the language which it has used. Moreover, the words of the statute should be construed according to their ordinary sense, and with the meaning commonly attributed to them.

*J. Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 46 (D.C. 1989) (citations omitted). Perhaps most significant for this case, a statutory provision is to be read, whenever possible, in harmony with other provisions to which it naturally relates. *See Carey v. Crane Serv. Co.,* 457 A.2d 1102, 1108 (D.C.1983) (quoting *United Mine Workers of Am. v. Andrus,* 189 U.S.App.D.C. 110, 114, 581 F.2d 888, 892, *cert. denied,* 439 U.S. 928, 99 S.Ct. 313, 58 L.Ed.2d 321 (1978)) ("[s]tatutory provisions are to be construed not in isolation, but together with other related provisions").

The natural if not the "plain" meaning of "legal representative," in context, includes an attorney appointed by the court expressly to represent and advocate for, *see S.S. v. D.M., R.M. and J.S.,* 597 A.2d 870, 875 (D.C.1991), the best interests of the child. Section 16–2354(a) concerns the filing of a motion with the court, a task customarily performed by an attorney. Given the authority expressly conferred on the court-appointed guardian *ad litem* by § 16–2304(b)(3), it makes no sense to hold, as appellant would, that the only attorney connoted by the statutory term "legal representative" is one whom the child has privately retained.

Nor is it reasonable to argue, as appellant does, that the meaning of "legal representative" must be derived from the definition of

1. The biological father relinquished his parental rights in 1991 and has not joined in this appeal.

2. D.C.Law 2–22, title IV, 24 D.C.Reg. 727, 767, 782 (1977).

3. Termination of parental rights is among the dispositions the trial court may order once a child has been found to be neglected. D.C.Code § 16–2320(a)(6). Indeed, "[a] motion for the termination of the parent and child relationship may be filed *only* when the child who is the subject of the motion has been adjudicated neglected at least six (6) months prior to the filing of the motion...." D.C.Code § 16–2354(b) (emphasis added). In the present case, the two minor children in question were adjudicated neglected on May 22, 1986. The guardian *ad litem* filed motions to terminate the parental rights of the biological parents on January 23, 1990.

"custodian" and "legal custodian" appearing elsewhere in the statute.[4] Applying these definitions, appellant contends that the "legal representative" must be the "person or institution who could exercise most of the powers or duties that a natural parent could exercise in making important decisions concerning the welfare of the child." In this case that institution is the District of Columbia government (specifically the Department of Human Services (DHS)), to whose legal custody the two minor children were committed in 1986.

While this understanding of the term legal representative might make sense in other contexts,[5] we deal here with a direct statutory link between the role of a guardian *ad litem*—appointed to represent the child in court proceedings—and the authority to initiate TPR proceedings when a child has been adjudged neglected. Appellant offers no reason why we should ignore this link in favor of a far more speculative connection between the "legal representative" who may bring TPR proceedings and the custodian responsible for the care and safekeeping of the child. Indeed, appellant's construction would make the term "legal representative" largely redundant in the ordinary case where DHS is the child's legal custodian, since the District of Columbia is already authorized expressly to file a TPR motion.

Recourse to the legislative history likewise fails to support appellant's argument. In the course of enacting the PCANA, the Council of the District of Columbia considered several versions of proposed § 16–2354(a). Appellant points out that an earlier version expressly authorized "the guardian *ad litem* for the child" (as well as the Corporation Counsel of the District of Columbia) to file a TPR motion. But nothing in the legislative mate-

rials suggests that, by replacing this phrase with the term "legal representative," the Council intended to restrict (by excluding guardians *ad litem*) rather than expand (to include, for example, an attorney retained by the child) the class of attorneys authorized to file TPR motions. The Report of the Committee on the Judiciary and the Criminal Law accompanying the proposed bill, and attachments to the Report, confirm the understanding of drafters and commentators alike that guardians *ad litem* would be permitted to file TPR motions. *E.g.*, Committee Report, at 26; Memorandum of Acting Director of DHS, at 7 (Attachment E to Committee Report); Summary of Latest Major Executive Comments on Title IV, at 3 (Attachment G to Committee Report).

Not surprisingly, therefore, Super.Ct.Neg.R. 25(a) implements § 16–2354(a) in the following manner: "A motion for termination of the parent and child relationship may be filed by (1) the District of Columbia government through its Corporation Counsel or (2) the child's guardian ad litem." Moreover, anticipating the very issue we decide here, this court recently stated that "[D.C.Code § 16–2354(a)] specifically authorizes the GAL [guardian *ad litem*], as legal representative for the child, to file a proceeding to terminate parental rights...." *In re J.J.Z.*, 630 A.2d 186, 191 n. 6 (D.C.1993) (dictum). We now elevate that conclusion to a holding.

## II.

Interpreting § 16–2354(a) in accordance with its natural meaning does not violate due process, as appellant, contends. Although the rights of natural parents to bring up their children are subject to the protection of

---

**4.** D.C.Code § 16–2301(12) defines "custodian" as "a person or agency, other than a parent or legal guardian, to whom the legal custody of a child has been granted by the order of a court or who is acting in loco parentis." The term "legal custody" is defined by § 16–2301(21) to mean:

a legal status created by Division order which vests in a custodian the responsibility for the custody of a minor which includes—

(A) physical custody and the determination of where and with whom the minor shall live;

(B) the right and duty to protect, train, and discipline the minor; and

(C) the responsibility to provide the minor with food, shelter, education, and ordinary medical care.

**5.** *See, e.g.*, BLACK'S LAW DICTIONARY (1979 ed.), stating that the

[t]erm "legal representative," which is almost always held to be synonymous with term "personal representative," means, in accident cases, member of family entitled to benefits under wrongful death statute.

the Due Process Clause of the Fourteenth Amendment (and hence the Fifth Amendment), "these rights are not absolute, and must give way before the child's best interests." *In re A.B.E.*, 564 A.2d 751, 755 (D.C. 1989). Permitting the guardian *ad litem*, appointed expressly to represent the child's best interests, to file a TPR motion is consistent with the ultimate purpose of such proceedings—determination of where the child's best interests lie. *See* D.C.Code §§ 16–2353(a), –2359(f). We have held, relying essentially on the plain language of D.C.Code § 16–2305, that the guardian *ad litem* may not bring *neglect* charges independently; the statute reserves that authority exclusively to the Corporation Counsel of the District of Columbia. *In re J.J.Z., supra*, 630 A.2d at 190–91.[6] But due process does not require us to disregard the natural meaning of § 16–2354(a) and apply the same prohibition to TPR motions. A neglect petition represents the initial intrusion by the government into the "fundamental and constitutionally protected right of a natural parent to raise his or her child." *Id.* at 192. Hence, even if due process did not require the government alone to make this original "prosecutorial" decision, *id.*, the legislature has settled the point as a matter of policy. But once a child has been adjudicated neglected (and possibly removed from the biological parents), the right of family privacy and integrity has already been subordinated to that extent to "the [District of Columbia's] ... right and ... duty to protect minor children through judicial determinations of their interests." *In re N.H.*, 569 A.2d 1179, 1182 (D.C.1990). At that point, no valid right to family integrity is breached merely by allowing the guardian *ad litem*, who may be uniquely familiar with the facts of the case and the parties, to initiate and pursue TPR proceedings.

Particularly is this so since the identity of the "prosecutor" does not affect the basic procedures governing the conduct of the TPR proceeding. As *amicus* points out, the biological mother in this case

enjoyed a broad spectrum of procedural protections. She was represented by appointed counsel throughout the neglect and TPR proceedings, a privilege not even required by due process, *see Lassiter [v. Department of Social Servs.]*, 452 U.S. 18 [101 S.Ct. 2153, 68 L.Ed.2d 640] [1981]. She has raised no dispute regarding the notice she received of various matters in those proceedings or her opportunity to be heard on any of the issues. Under D.C. law, she was provided the opportunity to engage in full discovery. D.C.Super.Ct.Neg.R. 15. As dictated by the Constitution, *Santosky [v. Kramer]*, 455 U.S. 745 [102 S.Ct. 1388, 71 L.Ed.2d 599] [1982], the grounds for termination had to be proved by clear and convincing evidence. [*See* D.C.Code § 16–2359(f).] With such protections, it is inconceivable that allowing the GAL to bring the action carried a significant risk of an erroneous determination. *See Lassiter*, 452 U.S. at 32–33 [101 S.Ct. at 2162] (finding that a parent's right to a particular procedural protection did not exist when the procedure "could not have made a determinative difference").

*Cf. In re Kossow*, 393 A.2d 97, 103–09 (D.C. 1978) (due process not violated when court permits private advocate "to press civil commitment at the judicial stage").

In sum, due process affords no support to appellant's attempt to rewrite § 16–2354(a) and deny the guardian *ad litem* authority to initiate and pursue TPR proceedings.

### III.

■ Appellant's remaining arguments for reversal of the termination order are also unavailing. First, as required by D.C.Code § 16–2356, "the agency having the legal custody of the child," the District of Columbia Department of Human Services, was a party to the TPR proceedings.[7] This did not pre-

---

6. D.C.Code § 16–2305(c) provides in part: "Each [neglect] petition shall be prepared by the Corporation Counsel...." As we stated in *In re J.J.Z.*, "[N]owhere does the statute provide expressly or implicitly for the GAL to pursue a neglect petition independent of the Corporation Counsel." 630 A.2d at 191 (footnote omitted).

7. In its praecipe requesting permission to waive its presence at further proceedings on the TPR motion, the District government "concurr[ed]" in the filing of the motion.

vent the agency, through its attorney, from waiving its presence at the hearing on the motion. *E.g., Arrington v. Robinson,* 114 F.2d 821, 823 (3d Cir.1940) (party may waive its presence at proceeding expressly or by voluntarily absenting itself; waiver does not constitute withdrawal from case); *Keister v. McDavid,* 76 A.2d 776, 777 (D.C.1950).

Second, "[w]e may reverse a trial court's determination of where the best interests of the child lie only when the judge has abused his [or her] discretion." *In re D.R.M.,* 570 A.2d 796, 803 (D.C.1990). Here the trial judge heard testimony from three social workers assigned at various times to appellant's case, an educational specialist, and the two minor children (then eight and six years old, respectively). Appellant, although called to testify by the guardian *ad litem,* refused to take the stand. In her written termination order, the trial judge applied the statutory factors set forth in D.C.Code § 16–2353, and found by clear and convincing evidence that severance of the parent and child relationship was in the best interest of the children. Appellant makes only two non-conclusory arguments in challenging this finding.[8] She first notes the trial judge's finding that the Fonvilles—the family with whom the children had lived for most of their lives ("virtually all of [the younger child's] life")—"have been identified as a prospective adoptive family" for the children, and contends there is no "record" support for this finding. We need not revisit the legal issue of the necessity *vel non* of identification of prospective adoptive parents as a condition for termination, *e.g., In re A.W.,* 569 A.2d 168 (D.C.1990); *id.* at 174–77 (Rogers, C.J., dissenting), for the record contains ample proof, in the testimony of social worker Cowser, that the Fonvilles had been identified as prospective adoptive parents for the children.

██ Appellant further contends that the trial judge unfairly drew "adverse inferences" from her refusal to take the stand when called as a witness by the guardian *ad litem.* The trial judge's written findings of fact, however, recite and rely upon the testimony of the witnesses enumerated above; they

draw no explicit inferences—nor does appellant identify any—from the fact alone that appellant refused to take the stand. At most, we can say that the judge was aided in reaching particular findings (such as appellant's repeated failure to cooperate in efforts at reunification, or to seek psychiatric help) by appellant's failure to controvert evidence adduced in the children's behalf. In that limited sense her refusal to testify in the proceedings may have worked against her, but legitimately so. We find no abuse of discretion in the order terminating parental rights.

*Affirmed.*

---

8. Beyond these arguments appellant merely asserts, without substantiation, that "the statutory factors for termination ... were not met by clear and convincing evidence."