664 A.2d 337 (1995)
In the Matters of: P.D. and D.D. (Children) De.D. (Mother) and C.D. (Father), Appellants.
Nos. 92-FS-438, 92-FS-439, 92-FS-585, and 92-FS-593.
District of Columbia Court of Appeals.
Argued May 3, 1995.
Decided August 24, 1995.
George C. Dreos, appointed by the court, for appellant De.D.
Robert E. Richardson, appointed by the court, for appellant C.D.
Carla S. Rappaport, appointed by the court, for P.D. and D.D.
John Payton, Corporation Counsel at the time the memorandum was filed, Charles L. Reischel, Deputy Corporation Counsel, and Mary Wilson, Assistant Corporation Counsel, filed a memorandum in lieu of brief for the District of Columbia.
*338 Before TERRY and STEADMAN, Associate Judges, and MACK, Senior Judge.
Opinion for the court by Associate Judge STEADMAN.
Separate statement by Senior Judge MACK at 340.
STEADMAN, Associate Judge:
C.D. and De.D. appeal from a trial court order terminating their parental rights with respect to their daughters, P.D. and D.D. The following arguments are made on appeal with respect to the proceeding before the trial court: (1) the mother did not receive the statutorily required notice for the termination hearing, (2) the decision to terminate appellants' parental rights was not supported by clear and convincing evidence, and (3) the guardian ad litem did not have the authority to bring a motion to terminate parental rights. It is also averred that changed circumstances regarding the prospects of adoption by the children's current foster parents calls into question the correctness of the trial court's ruling. We affirm.

I.
The guardian ad litem ("GAL") for P.D. and D.D. filed a motion to terminate parental rights ("TPR") on June 18, 1991.[1] A trial on the motion was held from February 5 through 18, 1992, before Judge George Herbert Goodrich. The GAL presented testimony from agency social workers, the foster mother, and clinical psychologists. The mother, De.D., testified on her own behalf; the father, C.D., did not present any evidence. The trial judge also spoke with the two girls in chambers.
The trial court issued a written decision terminating the parental rights of C.D. and De.D. The court noted that the previous decisions of Judges Burgess and Moore to deny the TPR motions were "largely based on the relationship between the natural parents and the children which, while not ideal, was thought to be sufficient and on the lack of an adoptive home."[2] However, based on "the entire record of this proceeding before this Court," (emphasis in original), the court concluded "that the termination of parental rights of [C.D. and De.D.] would be in the best interests of [P.D. and D.D.]."

II.
A. The mother's first contention is that she did not receive the statutorily required notice of the trial. See D.C.Code § 16-2357 (1989 Repl.). However, the mother has failed to ensure that this court has been provided with the transcript of the first day of the trialthe day for which she allegedly was not present. See Cobb v. Standard Drug Co., 453 A.2d 110, 111 (D.C.1982). Accordingly, we are unable to ascertain what transpired between the trial court and counsel resulting in the trial court's decision to proceed in the mother's absence.
The statute directs that "[w]hen a motion to terminate the parent and child relationship is filed, a judge shall promptly set a time for an adjudicatory hearing and shall cause notice thereof to be given to all parties." D.C.Code § 16-2357(a). The statute also provides that "[a] judge shall direct the issuance to and personal service upon the child's parent of a summons together with a copy of the motion to terminate the parent and child relationship." D.C.Code § 16-2375(b); see also Super.Ct.Neglect R. 25(a). However, the statute specifically allows the trial court to proceed where it determines that an absent parent has been given proper notice. D.C.Code § 16-2359(a); see also Super.Ct.Neglect R. 25(b)(1).
The mother was served with a summons, in compliance with the statute, for the original trial date, set for December 9, 1991. *339 This date was subsequently changed to February 10, 1992, at the request of the mother's counsel, as evidenced by the praecipe filed in the Superior Court. The statute does not require that a new summons be served if there is a change in the trial date. Rather, pursuant to subsection (a), the trial court must ensure that the parties have notice of the time of the hearing. The trial court made an explicit finding that proper notice had been given to the parents by personal service. The mother's attorney clearly had notice of the new date, as the change was made at his request, and he was also present at all the proceedings. See Greenwood's Transfer & Storage Co. v. District of Columbia Dep't of Employment Servs., 553 A.2d 1246, 1247 (D.C.1989) (per curiam) (mailing of notice to party's counsel of record is equivalent to mailing of notice to party). Furthermore, as conceded at oral argument, the mother herself had actual notice of the new date. See Stamenich v. Markovic, 462 A.2d 452, 454 n. 5 (D.C.1983) ("Because appellants had actual notice of the hearing, and because notice is all that is required, the rule [Super.Ct.Civ.R. 65(a)(1) ] was satisfied"); see also Regional Constr. Co. v. District of Columbia Dep't of Employment Servs., 600 A.2d 1077, 1079 (D.C.1991) (defect in notice harmless where party had two months actual notice and fully participated in hearing), cert. denied, 505 U.S. 1206, 112 S.Ct. 2997, 120 L.Ed.2d 873 (1992).
B. The parents contend that the decision to grant the TPR motion was not supported by clear and convincing evidence. This court will reverse a trial court's decision that a termination of parental rights is in the best interests of a child only upon a showing of an abuse of discretion. See In re T.W., 623 A.2d 116 (D.C.1993). The GAL provided evidence showing inappropriate and selfish behavior on the part of the mother during visits which upset and dismayed the children. There was also evidence presented that the natural parents often failed to attend scheduled visits which resulted in disappointment on the part of the children. Testimony from social workers related the efforts by DHS to provide assistance (such as counselling, job training, etc.) to the parents so that they would be able to care for the children, of which the parents failed to take advantage. Neither parent presented any plans by which they might be able to take care of the children at any point in the future, despite efforts by the Department of Human Services to effectuate a reunion. An adoption recruiter testified that the children were adoptable and that their chances of adoption would be increased if the natural parents' parental rights were terminated. The trial court carefully considered the statutory criteria, see D.C.Code § 16-2353(b), before deciding to grant the TPR motion. On the record before us, we find no abuse of discretion in the trial court's decision.
C. The parents also maintain that the statute does not permit a TPR motion to be brought by the GAL, but rather it must be brought by the District through the Office of Corporation Counsel. This argument was rejected by another panel of this court in In re L.H., 634 A.2d 1230 (D.C.1993), and we are bound by that decision absent an en banc review of the issues decided. See M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C.1971).

III.
Finally, in various motions before this court and at oral argument, the parents have proffered supplemental documents, suggesting in particular that the children's current foster parents have reached a decision that they do not wish to adopt the children. At the time of the trial on the TPR motion, the foster parents indicated that they had not yet reached a decision on adoption. The parents maintain that in light of the new developments, this court should not without further proceedings affirm the grant of the TPR motion, citing In re D.G., 583 A.2d 160 (D.C. 1990).
Although the prospect of adoption is "one factor in the assessment of whether termination of parental rights [is] in [the child]'s best interests," see id. at 168, the lack of a prospective adoptive home does not preclude the trial court from granting a TPR motion, see In re A.W., supra note 2, 569 A.2d at 172. In the present case, the trial court did not act on the basis of an anticipated adoption by the foster parents in granting *340 the TPR motion. Indeed, the trial court specifically noted that the foster parents "have not reached a decision regarding adoption of the children." Furthermore, the trial court focused primarily on the poor relationship that the parents had with the children, rather than an increased possibility of adoption by these particular foster parents if the TPR motion was granted. The court discussed at length the statutory factor outlined in D.C.Code § 16-2353(b)(2)"the physical, mental and emotional health of all individuals involved"which, as we have noted, requires the trial court to focus "on how well the parent, despite significant problems, can meet the particular needs of the child." In re D.S., 600 A.2d 71, 82 (D.C.1991).
This case is quite different from In re D.G., where we remanded a trial court's decision for further consideration because we were unable to determine "how much importance the trial court attached to the prospect of adoption." 583 A.2d at 161. In that case, at the time the trial court granted the TPR motion, the foster mother testified that she and her husband intended to adopt D.G. Id. at 163. However, by the time of appellate review, there had been a "breakdown" in the relationship between the foster parents and D.G., which resulted in D.G. being moved to a group home to await placement in a different foster home; hence, the adoption by the foster parents was "no longer a realistic possibility." Id. at 161, 163 n. 4. Thus, what was apparently a key element in the trial court decision had become negated. In contrast, the adoption here by the foster parents was not imminent; the trial court explicitly noted that the foster parents had made no decision on the issue. Although at this time there may be little or no hope that the foster parents will adopt, the trial court clearly realized that this was a distinct possibility, given the foster parents' hesitation even after the girls had lived with them for several years. We see no basis to delay further a ruling on the challenges to the order as appealed.[3] Accordingly, the judgment is
Affirmed.
MACK, Senior Judge, separate statement:
"TPR" represents the coldest of acronyms. The intrusive pursuit of terminating the right of a natural parent to raise his or her child is not a simple regulatory function; it is rather a last-resort device employed by the state to protect a child at the risk of infringing upon the constitutionally protected right of a parent. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). This "fundamental liberty interest of natural parents in the care, custody and management of their children does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the state." In re N.H., 569 A.2d 1179, 1181 (D.C.1990) (citing Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982)). The state must present the higher standard of proofi.e., "clear and convincing" evidence of neglect or abuse before permanent deprivation of parental rights. Santosky, supra at 768-70, 102 S.Ct. at 1402-04.
I put aside, at this juncture, any observation which is obviously irrelevantthe question of whether I would find the evidence here presented by the guardian ad litem ("GAL") to be clear and convincing. I feel compelled, however, to speak to another irrelevancy; notwithstanding our court's decision in In re L.H., 634 A.2d 1230 (D.C.1993), I voice my agreement with the appellant's argument in the instant case that the GAL, an attorney who "shall in general be charged with the representation of the child's best interest" (see In re J.J.Z., 630 A.2d 186, 191 (D.C.1993) (emphasis added)) should not have had the authority to bring this TPR motion. In In re J.J.Z., we stated emphatically in the text that the D.C.Code did not authorize a guardian ad litem to pursue a neglect proceeding independently of the Corporation Counsel. Id. at 191. In In re L.H., we characterized that holding in the J.J.Z. text as dictum and elevated an In re J.J.Z. footnote (commenting that "in contrast" the GAL might file a TPR motion) to the status of a conclusion that is now a holding, In re L.H., supra, 634 A.2d at 1232. It does not make sense to me to say that an annointed privately *341 practicing attorney can file and independently litigate a motion which might terminate forever a natural parent's right to the care and enjoyment of his or her offspring, but at the same time is prohibited from filing an initial petition which might only deprive that parent of temporary custody. Thus it is the parens patriae role that allows a court to provide relief to protect the best interest of a child at every stage of the proceeding. In re J.J.Z., supra, 630 A.2d at 193-94. That parens patriae power must be exercised in proper circumstances and within statutory constraints. Id. at 193. In the District of Columbia, the court and the Corporation Counsel play the parens patriae role. Id. at 194. The Corporation Counsel, in the plain meaning of the statute, has exclusive authority to file a neglect petition. Id. at 190. Yet, by virtue of our holding in In re L.H., supra, a lawyer, appointed as a guardian ad litem in the neglect proceeding may file and prosecute the termination of rights proceeding. The risk of this dichotomy in logic is evident in our case files of the instant action.
According to the findings of the trial court, this third TPR action was prosecuted by the guardian ad litem over the jurisdictional objection of defense counsel. Pretrial motions filed by the GAL resulted in the court's ruling that depositions of the two children, then 9 and 10, would not be allowed and that their presence at trial would not be required. The court agreed to talk with the children in chambers with the attorneys (who had been allowed to submit advisory questions) to stand nearby for information as to the outcome. The conscientious court took judicial notice of the neglect stipulation dated September 14, 1983, as well as the previous orders entered by Judge Burgess (1986), and Judge Moore (1989), denying a request for TPR.[1] At the court hearing, two psychologists, two social workers, an adoption unit supervisor, and the children's mother testified. Counsel for the Corporation Counsel, was allowed to be excused over the objection of attorneys for the mother and father. The court indicated it would rule on the jurisdictional issue at the close of the proceeding, and did so subsequently in reliance inter alia on a Superior Court ruling in In re L.H., No. N-2-86 (Feb. 19, 1992), and numerous authorities. After a review of the complete record, the court concluded that the parents did not merit a third opportunity to become "acceptable parents" and granted the "TPR motion."
On appeal to this court, the GAL who prosecuted the TPR proceeding and who may be "uniquely familiar with the facts ... and the parties" (In re L.H., supra, 634 A.2d at 1233), had relocated her offices and left no forwarding address with this court. Another attorney appointed (pursuant to D.C.Code § 16-2304(b)(1) (1989)) to represent the children *342 on appeal withdrew without notification and necessitated reappointment of yet another counsel. Counsel for the District of Columbia, noting that, in this case, it was the guardian ad litem who had filed and litigated the TPR motion, submitted the case, therefore, on its exhaustive brief filed in the case of In re L.H., supra, the trial court's findings and "any" brief filed by the guardian ad litem.
As to the evidence, I could not suggest that the unsophisticated, troubled parents who entered into a stipulation of neglect of two infant girls were model parents. Obviously, their inability to meet professional standards over the years has placed them at a disadvantage when compared with foster parents or potential adoptive parents (apparently ruled out at this stage). However, as any parent remotely capable of love might tell you, one of the most wrenching heartbreaks of life is to be permanently separated from one's childrenalbeit because of their death, disappearance or court edict. In the poetic cadence of another era (although not necessarily a kinder and gentler one): "Would that the courts not have to deal therewith!"
I only suggest that the issue, of whether a court-appointed guardian ad litem may independently file and litigate a TPR motion, deserves the attention of the en banc court.
NOTES
[1] On September 14, 1983, C.D. and D.D. were, by stipulation, found to be neglected within the meaning of D.C.Code § 16-2301(9)(B), (C). Subsequently, on two occasions prior to the present action, the GAL had brought a motion to terminate parental rights. These motions were denied, the first by Judge A. Franklin Burgess, Jr., and the second by Judge Luke C. Moore.
[2] Judge Goodrich noted that in light of this court's decision in In re A.W., 569 A.2d 168 (D.C.1990), the lack of an adoptive home was "no longer fatal to a motion to terminate parental rights."
[3] We do not address any post-judgment relief that may be available to the appellants.
[1] Judge Burgess concluded:

The specific parenting skills described by the social workers as deficient do not, in the Court's mind, touch matters of fundamental importance to the children's best interests. While the Court does not itself believe that the mother possess the "parenting skills" it would wish all parents possessed, the Court is unable to find by clear and convincing evidence that the mother's way of dealing with her children are so deficient as to require removing them from her care. The interaction and relationship between [De D.] and the respondents is a good, long standing relationship, and outweighs any deficiencies in parenting skills.
Judge Moore found:
Both [De D.], mother, and [C.D.], father, have maintained a relationship with the Respondents. Although [De D.] and [C.D.] may not possess the skills to undertake the care and custody of Respondents, both parents, with reasonable frequency, visit the children. Out of 29 supervised visits, [De D.] came to 17 visits and [C.D.] came to 25. Out of 26 unsupervised visits, [De D.] came to 10 visits and [C.D.] came to 16. The quality of the parents' interaction with the Respondents is such that it would not be in the best interests of the Respondents, absent the identification of an adoptive family, to terminate their rights completely.
* * * * * *
Both parents suffer from excessive use of alcohol. While their problems in this regard are severe, the Court does not discern from the evidence that their course of conduct is irreversible or beyond resolution. Indeed, it appears from the evidence that continued intensive therapy may achieve some results.
* * * * * *
The D.C. Department of Human Services has not identified an adoptive home for the Respondents, and while the natural parents have limitations that prevent them from undertaking the care and custody of the Respondents, they have demonstrated that they love and have an abiding interest in the Respondents.