In the Matter of N.H.

**T.H., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 88–208.**

District of Columbia Court of Appeals.

Argued Nov. 30, 1989.
Decided Jan. 31, 1990.

---

Thomas Ruffin, Jr., Washington, D.C., for appellant.

James C. McKay, Jr., Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and GALLAGHER, Senior Judge.

ROGERS, Chief Judge:

Appellant, T.H., appeals from the determination that her child was a neglected child pursuant to D.C.Code § 16–2301(9)(B) and (C) (1989 Repl.) on the ground that the statutory scheme violated her constitutional right to due process. Specifically, she maintains that D.C.Code § 16–2317 (1989 Repl.) is unconstitutional because it fails to require proof of neglect by clear and convincing evidence, that D.C.Code § 2–1355 (1988 Repl.) permits use of medical evidence in violation of her right of privacy, and that the statutory procedures are gen- erally violative of her right of privacy to the custody of her child. We affirm.

### I.

T.H. gave birth to N.H. on December 22, 1985, at D.C. General Hospital. At the time she had no plans for a home for the child. For that reason and because of the child's medical problems, N.H. remained in the hospital until February 3, 1986. When the child was released from the hospital, the mother took her to live at the home of a cousin. This arrangement lasted only a week, and the mother then requested that the D.C. Department of Human Services (DHS) provide emergency care for the child which was available for a maximum of 90 days. During the 90 days that N.H. was under the protective care of the DHS, the mother was admitted to St. Elizabeth's Hospital on an emergency basis when she was found drunk lying in the street. The child was not returned to her mother after the 90 day period was over.

On November 21, 1986, the District of Columbia filed a petition alleging that N.H. was a neglected child under D.C.Code §§ 16–2301(9)(B) and (C) because "her mother is unable to discharge her responsi- bilities to and for the child because of men- tal illness." On December 10, 1986, Judge Huhn ordered that the child be placed in shelter care, with the provision that "the mother shall be entitled to reasonable rights of *supervised* visits." (emphasis in original). On January 16, 1987, Judge Kol- lar-Kotelly ordered the mother to submit to a mental examination and amended the shelter care order to permit the mother two to three supervised visits each month so long as she cooperated fully with the social worker.

The mother filed a motion to end shelter care for N.H., asserting that the child's maternal grandmother was now willing to have the child live in her home and other siblings of the mother—a 30 year old broth- er and a 20 year old sister—were also living at the home and could assist in car- ing for the child. This motion, filed on May 29, 1987, when N.H. was 17 months old, was opposed by the government on the

grounds that the mother had a history of mental disorders, having been hospitalized at St. Elizabeth's Hospital at least three times, and had been admitted to emergency care at St. Elizabeth's Hospital as recently as May 21, 1986, after being found drunk and lying in the street, and had left the hospital on July 10, 1986 against medical advice and then failed to continue outpatient psychiatric treatment. The government also asserted that all of the relatives were not living in the grandmother's home and that Dr. Spevak, the doctor who had examined the mother on March 23, 1987, recommended the mother not be given custody of the child because of her mental incapacity. The mother thereafter filed affidavits of three relatives who had volunteered to take custody of the child. The mother also filed a motion to dismiss the neglect petition or to change the burden of proof to require proof by clear and convincing evidence that a child was neglected under the §§ 16–2301(9)(B) and (C). The child, for whom counsel had been appointed, opposed the motion to end shelter care and the motion to dismiss the neglect petition. Judge Levie denied the mother's motion.

A hearing was held on the neglect petition on January 29, 1988, more than a year after the neglect petition had been filed.[1] A social worker testified that the mother did not act like a normal mother toward N.H. and frequently had missed scheduled visits with her daughter. Dr. Vivienne Isaacson, a staff psychiatrist at St. Elizabeth's Hospital, testified that the mother was suffering from "a[n] organic affected disorder, which is a mood disorder associated with organic brain disorder, mixed substance abuse and a history of seizure disorders since childhood." Dr. Spevak, a psychiatrist employed by the DHS, testified that the mother "was a woman with an impaired memory," "effectively unstable," and "was suffering from an organic brain syndrome that significantly impaired her ability to take care of herself, much less

anyone who would be primarily dependent upon her." Judge Wertheim found that the mother "suffers from an organic brain syndrome and did so at the time of the petition," that the mother's "mental incapacity effected [sic] her ability to care for a child" and that the mother's "conduct with the child indicates an inability to accurately perceive the child's needs and to respond appropriately even in the most elementary way." Judge Wertheim ruled that the government had met its burden of proof by a preponderance of the evidence to show that N.H. was a neglected child within the meaning of D.C.Code § 16–2301(9)(B) and (C).

II.

On appeal the mother contends that the statutory scheme, and specifically § 16–2317(c)(2), violates due process because it only requires that a finding of neglect be based on a preponderance of the evidence. She argues that this standard fails to strike a fair balance between her interest as the mother in regaining custody of her daughter, the child's interest in an accurate judgment at trial, and the government's administrative interest in maintaining the preponderance standard as well as its parens patrie obligation to reunite the mother and the child if possible. She maintains that the effect of the neglect determination means it is likely she will never be able to regain custody of her child and, therefore, the standard of proof should be higher than a preponderance of the evidence. She relies principally on *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

Unquestionably, "the fundamental liberty interest of natural parents in the care, custody and management of their children does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the state." *Santosky v. Kramer, supra,* 455 U.S. at 753, 102 S.Ct. at 1395. The right of

---

1. On July 27, 1987, the mother filed a motion to hold DHS in contempt contending that DHS violated the court order by preventing the mother on several different occasions from seeing and being with her daughter. The motion was denied by Judge Kollar–Kotelly on August 14, 1987.

a natural parent to raise one's child is a fundamental and essential precept which is constitutionally protected. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). At the same time, however, the Supreme Court has recognized that this right is not absolute and that the state has both the right and the duty to protect minor children through judicial determinations of their interests. *Id.*

This court has previously rejected the argument raised by appellant. In *In re B.K.,* 429 A.2d 1331 (D.C.1981), the court stated:

> Appellant, however, argues that because the ruling below separated him from his child, and thus threatens the sanctity of his family, *see Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) the Constitution requires that the standard of proof be "clear and convincing evidence." In *In re: J.S.R.,* D.C.App., 374 A.2d 860 (1977), we stated that the consequences of a finding that parental consent to an adoption was being withheld contrary to the best interests of the child are "far more severe than those of a finding of neglect." *Id.* at 864. Nonetheless, we held that, although the higher standard of "clear and convincing evidence" was warranted in the adoption case, it was not constitutionally required. Therefore, it follows that in a neglect proceeding the Constitution does not require the "clear and convincing evidence" standard.

429 A.2d at 1333. The mother here contends that the decision of the Supreme Court in *Santosky v. Kramer, supra,* 455

U.S. at 745, 102 S.Ct. at 1390, commands that we reach a different conclusion. We disagree.

Whether the "preponderance of the evidence" burden of proof is constitutionally sufficient depends on the magnitude of the interest in the right which is being infringed. *See Santosky v. Kramer, supra,* 455 U.S. at 755, 102 S.Ct. at 1395. As the Supreme Court stated in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), "the function of a standard of proof, as the concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he [or she] should have in the correctness of factual conclusions for a particular type of adjudication." *Id.* at 423, 99 S.Ct. at 1808 (quoting *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)).[2]

In *In re L.E.J.,* 465 A.2d 374 (D.C.1983), this court distinguished *Santosky v. Kramer:*

> In *Santosky v. Kramer,* 455 U.S. 745 [102 S.Ct. 1388, 71 L.Ed.2d 599] (1982), the Supreme Court held that a state must present "clear and convincing" evidence of neglect of abuse before terminating a parent's right to the custody of a child. The higher standard of proof imposed by *Santosky,* however, need not be met here because this case involves only a temporary suspension, not a permanent deprivation, of parental rights.

465 A.2d at 377 n. 5.[3] Because the statutory scheme for child neglect involves tem-

---

**2.** Commenting on *Addington* in *Santosky v. Kramer,* the Supreme Court stated that "[i]n any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the public and private interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." 455 U.S. at 755, 102 S.Ct. at 1395. The Court has mandated an intermediate standard of proof—"clear and convincing evidence"—when the individual interests at stake in a state proceeding are both "particularly important" and "more substantial than mere loss of money." *Santosky v. Kramer, supra,* 455 U.S. at 755, 102 S.Ct. at 1395 (parental termination); *Addington v. Texas, supra,* 441

U.S. at 424, 99 S.Ct. at 1809 (civil commitment); *Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation).

**3.** Similar challenges have been rejected in other jurisdictions. *See e.g. Hodorowski v. Ray,* 844 F.2d 1210, 1217 (5th Cir.1988); *Delahunty v. Hawaii,* 677 F.Supp. 1052, 1057 (D.Haw.1987); *In re Tammie Z.,* 66 N.Y.2d 1, 1041, 494 N.Y. S.2d 686, 687, 484 N.E.2d 1038, 1039 (1985); *In re J.K.,* 49 Wash.App. 670, 745 P.2d 1304, 1306 (1987); *In re Colin R,* 63 Md.App. 684, 693, 493 A.2d 1083, 1089 (1985); *In re O.E.P.,* 654 P.2d 312, 315–317 (Colo.1982) (en banc); *In re K.B., T.B., and S.B.,* 302 N.W.2d 410, 411 (S.D.1981);

porary, third party placement or supervised placement of a child with the parent for a two-year period, followed by annual reviews after notice and hearing and a new determination that the child is neglected,[4] we conclude that these procedures accord procedural due process to the parent and the child.

### III.

■ The mother also contends that the medical disclosures by the two doctors who examined her violated her constitutional right to privacy. D.C.Code § 14–307 forbids a physician, surgeon or mental health professional to give testimony without the consent of the person afflicted or of his legal representative. An exception to this general privilege is provided in D.C.Code

§ 2–1355 for neglect proceedings, however.[5] In the trial court the mother argued that only the Mental Health Information Act of 1978, D.C.Code § 6–2002,[6] should apply.[7] The trial judge disagreed and ruled that § 2–1355 applied and made the requisite finding.[8] The statutory definition of neglected child includes a child whose parents are unable to discharge their responsibilities because of mental incapacity. D.C.Code § 16–2301(9)(B). Obviously, to exclude information about the mother's mental condition would deprive the judge of important information required for a disposition in the best interests of the child.

The mother contends that she has a fundamental constitutional right of privacy that prevents disclosure of medical infor-

---

*Tucker v. Marion County Dept. of Public Welfare*, 408 N.E.2d 814, 819–820 (Ind.1980).

4. *See* D.C.Code § 16–2322(a) (an order placing legal custody of a child in a department, agency, or institution must be reviewed after two years but may last a shorter period of time); §§ 16–2331 to –2335 (neglect proceedings are closed to the general public and the records may be sealed); § 16–2316 (all competent, material and relevant evidence is admissible at a neglect hearing); and Super.Ct.Neg.R. 16 (a hearing must be held on the petition and, if the court finds merit in the petition, a formal factfinding hearing is required).

5. D.C.Code § 2–1355 (1988 Repl.) provides:
   Notwithstanding the provisions of §§ 14–306 and 14–397, neither the husband-wife privilege nor the physician-patient privilege shall be grounds for excluding evidence in any proceeding in the Family Division of the Superior Court of the District of Columbia concerning the welfare of a neglected child: Provided, that a judge of the Family Division of the Superior Court of the District of Columbia determines such privilege should be waived in the interests of justice.

6. D.C.Code § 6–2002 (1989 Repl.) provides in relevant part:
   (a) Except as specifically authorized by subchapter II [client's consent], III [exceptions] or IV [court related disclosures] of this chapter, no mental health professional, mental health facility, data collector or employee or agent of a mental health professional, mental health facility or data collector shall disclose or permit the disclosure of mental health information to any person, including an employer.

7. Judge Levie noted, in denying the mother's prehearing motion to dismiss the petition, that

she had failed to present an evidentiary record to show putative use of medical evidence and that a record could be developed at trial. The record on appeal provides no such evidentiary basis to show a violation of the mother's statutory rights. See D.C.Code §§ 6–2031 to –2033. No claim was made that the Mental Health Act would vitiate the effect of § 2–1355. Judge Wertheim ruled that the Mental Health Act did not explicitly or impliedly amend § 2–1355, an issue we need not decide. We note, however, that § 6–2002 exempts from the prohibition on disclosures mental health information disclosed "to meet the compulsory reporting provisions of District ... law which attempt to promote human health and safety." Section 2–1352(a) requires disclosure by a physician to the police or the Child Protective Services Division of the D.C. Department of Human Services of any knowledge or reasonable suspicion that a child is neglected. It taxes logic to suggest that the Mental Health Act authorizes disclosure but would prohibit the same physician, despite § 2–1355, from bringing the same information to the attention of the court in a closed proceeding in the Family Division.

8. The trial judge stated
   Here we have an allegation that the child is in danger through alleged mental incapacity on the part of the child's mother. If it's true, it fits a clear definition of neglect under the statute. And it's in the child's interest for that determination to be made, based on the best available information. Clearly, information concerning the mother's mental health is of direct relevance. And nothing could be more relevant than the child's welfare. I conclude it's in the interest of justice to waive the privilege.
   *See* note 4, *supra*.

mation at trial. Contrary to the mother's view, none of the cases on which she relies holds that the right to privacy is absolute.[9] Nor, in view of her failure to provide a home for her daughter, is she in a position to argue persuasively that "the child [N.H.] has been held ransom, and the privacy of a mentally and emotionally troubled woman has been jeopardized, in order to force [the mother] to transfer her interests in the custody of her child to someone acceptable to the Department of Human Services." While the mother does not refer in her brief on appeal to § 2–1355, and relies instead on the substantive due process right of privacy, the only issue is whether the interest of the District of Columbia in assuring that the mother is mentally competent to raise her daughter is sufficiently strong to limit the mother's privacy rights. We hold that it is. *See In re Embrick,* 351 Pa.Super. 491, 498 n. 6, 506 A.2d 455, 459 n. 6 (1986) (Constitutional analysis involves a balancing of competing interests and the court's duty does not end once the individual's interests are identified); *Betty J.B. v. Division of Social Services,* 460 A.2d 528 (Del.1983) (parent's right to privacy and confidentiality in certain information must yield when the future well-being of the child is at issue); *In re Brenda H.,* 119 N.H. 382, 386, 402 A.2d 169, 172 (1979) (courts must exercise extreme caution and must balance the probative value of the evidence against the harm to psychologist-patient relationship); *In re Dodge,* 29 Wash.App. 486, 488, 628 P.2d 1343, 1347 (1981) (policy considerations involving custody and welfare of children dictate the need for flexibility in applying technical rules of evidence). *Cf. In re S.K.,* 564 A.2d 1382, 1388–90 (D.C.1989) (civil neglect statutes are designed to enable the state to protect children and, in order for the court to determine whether a child's welfare requires intervention, the court must be ap-

prised of all the facts). The statutory scheme is narrowly drawn to minimize the invasion of privacy,[10] and we agree with the government that the absence of a statutory physician-patient privilege in child neglect proceedings does not significantly or impermissibly infringe on any privacy right that a parent may have regarding medical information.

IV.

Finally, the mother contends that the government has intentionally kept the child away from her for three years "by the ruse of providing emergency shelter care for the child on a temporary basis...." This contention is meritless in view of the compelling state interest in protecting young children from neglect. *See In re Cochise Juvenile Action No. 5666–J,* 133 Ariz. 157, 163, 650 P.2d 459, 463 (1982) (en banc). The mother's argument, in substance, is that DHS has conspired to deny her custody of her child. Nothing in the record reveals any willful conduct by DHS to deprive the mother of custody of her daughter. The allegations are unsubstantiated in the record and we find no basis on which to conclude that the statutory scheme impermissibly infringed on the mother's right to custody of her child.

Accordingly, the judgment is affirmed.

---

9. The mother cites *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and the other line of cases dealing with right of privacy, *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

10. D.C.Code § 16–2316(e) (1981) (closed hearing); §§ 16–2331 to –2335 (confidentially and sealing of records); § 16–2336 (penalties for unlawful disclosure). *See In re M.C.,* 391 N.W.2d 674, 676 (S.D.1986) (abrogation of physician-patient privilege must be narrowly drawn in favor of protecting the interests of children in neglect proceedings).