**In re AM. V.,**

**In re AN. V.,**

**and**

**In re AK. V.**

**P.V., Appellant**

**Nos. 01–FS–211, 01–FS–212, 01–FS–213.**

District of Columbia Court of Appeals.

Argued Jan. 23, 2003.
Decided Oct. 10, 2003.

---

Marion E. Baurley, Washington, DC, appointed by the court, for appellant.

Bruce I. Yamashita, appointed by the court, for appellees Am.V., An.V., and Ak. V.

Robert R. Rigsby, Corporation Counsel at the time the briefs were filed, Charles

L. Reischel, Deputy Corporation Counsel at the time the briefs were filed, and Sheila Kaplan, Assistant Corporation Counsel, filed a statement in lieu of brief for the District of Columbia.

Before WAGNER, Chief Judge, and TERRY and FARRELL, Associate Judges.

TERRY, Associate Judge:

These consolidated appeals arise from three orders in which the trial court determined that three children were neglected, as that term is defined in D.C.Code § 16–2301(B) and (C) (2001).[1] After the court's initial determination of neglect, the mother (appellant P.V.) retained custody of all three children. A short time later, however, the children were removed from appellant's custody after it became known that she had not completed certain court-ordered parenting classes and that she had resumed her use of illegal drugs. After a final disposition hearing, the children were committed to the custody of the Department of Human Services ("DHS"). Before this court, appellant challenges the trial court's determination that the children were neglected and their resulting commitment to DHS.[2] We hold that there was sufficient evidence to support a finding of neglect under D.C.Code § 16–2301(9)(B),

but not under D.C.Code § 16–2301(9)(C). Accordingly, we vacate the adjudication of neglect under section 16–2301(9)(C), and affirm the neglect adjudication under section 16–2301(9)(B) and the final order committing the children to the custody of DHS.

I

Appellant is the mother of Am. V., Ak. V., and An. V, who are now fourteen, eleven, and six years old, respectively. In March 1997 the Child and Family Services Division of DHS became involved with appellant after she was arrested for destruction of property. Another complaint was made about appellant in September of the same year, when DHS was informed that the children were "poorly dressed, unsupervised, and were without appropriate food and supplies ... and that the mother left them alone frequently." Also in September 1997, DHS was contacted by teachers at Malcolm X Elementary School, who reported that Am. V. and Ak. V., the two oldest children, were "coming to school late consistently every day," that their "appearance was dirty [and] their clothing was dirty" and that Am. V.'s "hair was uncombed." At the hearing below, these conditions were verified by Bethenia Taylor, a teacher at Malcolm X, who described Am. V.'s appearance as "very, very un-

---

1. D.C.Code § 16–2301(9)(2001) provides, in relevant part:

    The term "neglected child" means a child:

    ※    ※    *    *    ※    *

    (B) who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or other custodian; or

    (C) whose parent, guardian, or other custodian is unable to discharge his or her

responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity[.]

2. This is the second appeal in this case. In the first appeal, the issue was whether appellant could appeal from the disposition order despite her failure to file a notice of appeal on time. This court remanded the case for a hearing to determine whether her late filing could be attributable to excusable neglect. *In re Ak. V.*, 747 A.2d 570 (D.C.2000). On remand, the trial court found that excusable neglect existed and granted appellant's motion to extend, retroactively, her time for filing a notice of appeal.

clean." Her clothing "appeared not to have been washed," and the skin on her neck had "dirt that was baked in." Am. V. came to school in this condition "just about every day." Ms. Taylor also told of Am. V's chronic tardiness, which was also a problem with Ak. V.

When the children's assigned social worker from DHS conducted a home visit, she found that "the home conditions were deplorable, disorganized, clothing all over the place ... the sheets in the bedroom [and] the pillow cases were filthy black. I had to tell the [mother] that she has to do laundry." At that point the social worker decided to arrange for a homemaking service for the family. However:

> That did not work out. We made three attempts to get that service in the home, and on each attempt the mother was not home even though she was notified of the appointment. And then, finally, the service began, but was terminated within ... two visits because she would not cooperate.

The social worker made monthly home visits. She testified, however, that sometimes she had to make return visits because appellant "wouldn't answer the door, or sometimes we learned that she was home and just would not respond ... she wouldn't let us in." Consequently, for about two months DHS was "unable to do a home visit to find out what was going on in the home ...."

At the hearing on the three neglect petitions, the trial court also heard testimony from the children's teachers, social workers, and appellant's drug counselor. Appellant was not present at the hearing, however, nor did her counsel present any witnesses. At the close of the hearing, the court found that "a pattern of neglect" had existed "over an extended period of time" with respect to the children's hygiene, clothing, and timely attendance at school which was not due to a lack of financial means. The court also found that appellant had failed to give Am. V. certain prescribed medication,[3] and that she was routinely uncooperative with the assigned social worker and had even refused to speak to her. Finally, the court concluded that because of appellant's recent drug use, she was unable to fulfil her responsibilities as a mother.

A disposition hearing was scheduled for another date about six weeks later. Before that hearing took place, however, the children's guardian *ad litem* filed a motion alleging that appellant had not completed certain court-ordered parenting classes and that since the earlier hearing she had again started to use narcotics. The motion also stated that on at least one occasion appellant had failed to pick up the children from school, and that the social worker had been denied access to the children when attempting to monitor their safety.[4] After an emergency hearing (which appellant again did not attend, although her counsel did), the court ordered that the children be removed from appellant's custody and that the two oldest children be placed in foster care.

At the disposition hearing a month later, the court ordered: (1) that all three children be committed to DHS; (2) that Am. V. and Ak. V. remain with the foster par-

---

3. Appellant's drug counselor testified that appellant admitted to him that she had failed to give this medicine to her daughter because she "did not want her to be on medication." The counselor did not know what kind of medication it was, however, and so stated in his testimony.

4. This motion is not in the record. Both parties, however, describe it in terms that are substantially identical. It is also summarized in our opinion in the previous appeal. *See In re Ak. V., supra* note 2, 747 A.2d at 572–573.

ents who had been caring for them since the earlier order; (3) that An. V., the youngest child, be taken from appellant's home immediately; (4) that Ritalin be given to Am. V., as recommended by a doctor after a psychiatric evaluation;[5] (5) that a psychiatric evaluation of appellant be conducted; (6) that appellant be given reasonable visitation rights; and (7) that DHS begin a search for suitable family members for the children to live with. The court also directed, however, that reunification of appellant and her children should be a priority and that the matter be set for review in six months.[6]

## II

The government has the burden of proving by a preponderance of the evidence that a child is neglected. *See, e.g., In re A.S.,* 643 A.2d 345, 347 (D.C.1994); D.C.Code § 16–2317(c)(2). In determining whether this standard has been met, this court "must consider the evidence in the light most favorable to the government, giving full play to the right of the judge, as the trier of fact, to determine credibility, weigh the evidence, and draw reasonable inferences." *In re T.M.,* 577 A.2d 1149, 1151 (D.C.1990) (citations omitted). We will reverse a finding of neglect only if it is "plainly wrong or without evidence to support it." D.C.Code § 17–305(a)(2001); *see, e.g., In re A.S.,* 643 A.2d at 347.

Furthermore, in reviewing the trial court's findings, this court must always bear in mind that "[n]eglect proceedings are remedial and focus on the child; they are critically different from criminal prosecutions, which are primarily concerned with the allegedly abusive parent." *In re S.G.,* 581 A.2d 771, 775 (D.C.1990); *see also In re S.K.,* 564 A.2d 1382, 1388 (D.C. 1989). As we have held in other neglect cases, "[t]he relevant focus for the court ... is the children's condition, not the [parent's] culpability." *In re B.C.,* 582 A.2d 1196, 1198 (D.C.1990). This is true because "[n]eglect does not require a finding of parental fault, only the inability or unwillingness to provide proper care for the child." *In re E.H.,* 718 A.2d 162, 169 (D.C.1998) (citation omitted).

In this case the government sought to prove that appellant's children were neglected within the meaning of D.C.Code § 16–2301(9)(B) and (C). In the context of this case, neglect under subsection (9)(B) required a showing that as a result of the children's poor dress, lack of cleanliness, excessive tardiness at school, appellant's uncooperative conduct with social workers, and her renewed drug use, the children were "without proper parental care or control ... [or] education as required by law, or other care or control necessary for [their] physical, mental, or emotional health, and [that] the deprivation [was] not due to the lack of financial means." Ne-

5. The court observed that, although the doctor stated that a conclusive diagnosis of attention deficit disorder could not be made for Am. V., he had provided "sufficient reason to believe that a trial period ... should be done. Even if [the Ritalin is] not needed, it will not produce any harm in the child, and it might be helpful."

6. Appellant had made some effort to address her problems during the course of the proceedings. For example, she cooperated with a social worker who went to the home three to five times a week and provided new school uniforms for the children, detergent, and guidance to appellant. Positive changes resulted: the children's clothes were kept clean thereafter, the home was better maintained, and the children did their homework and listened to their mother. Appellant voluntarily entered a treatment program for substance abuse in early 1997, and in October of that year she successfully completed that treatment. She was readmitted, however, on January 15, 1998.

glect under subsection (9)(C) required a showing that as a result of appellant's drug use, she was "unable to discharge ... her responsibilities to and for the [children] because of ... physical or mental incapacity." In light of all the evidence, we hold that the government proved by a preponderance of the evidence that the children were neglected under subsection (9)(B), but not under subsection (9)(C).

## A. *Neglect under section 16–2301(9)(B)*

■ School teachers familiar with the two older children (the youngest was not yet in school) testified that both of them were chronically tardy, and that the school's counselor and one of their teachers contacted appellant directly about the tardiness problem. Social workers and a teacher also testified that Am. V. was "very, very unclean."[7] Furthermore, appellant's home was described by visiting social workers as extremely disheveled and filthy. When attempts were made by DHS to have the house cleaned by an outside service, the cleaners could not gain access to the home on three occasions because appellant was not there, even though she had been notified in advance of the appointments. Social workers also testified that appellant was uncooperative when they arrived at her home to check on the children, in some cases being conspicuously absent even though she had been contacted before their visit. The only significant improvement in the children's appearance and hygiene occurred after DHS workers purchased new school uniforms and detergent with which to wash them.

Finally, evidence was presented that appellant had a history of drug abuse. While it temporarily subsided after treatment, there was uncontroverted evidence that she was readmitted into a rehabilitation program shortly before the original neglect hearing in January 1998. It was also stipulated that appellant had tested positive for cocaine just one month before the January hearing.[8] Given this evidence, as well as the trial court's finding that the government witnesses were credible, the court's determination of neglect under subsection (9)(B) was not "plainly wrong." *See* D.C.Code § 17–305(a). Viewing these factors collectively, the court could reasonably conclude, in the language of the statute, that the children suffered from a lack of "proper parental care ... necessary for [their] physical, mental, or emotional health." *See In re O.L.*, 584 A.2d 1230, 1233 (D.C.1990) (in determining whether a child is neglected, a court must look at the evidence in its entirety); *see also In re S.K.*, 564 A.2d at 1389 (Schwelb, J., concurring) ("the judge must know as much as reasonably possible about [the child's] situation").[9]

7. *See, e.g., In re A.M.*, 589 A.2d 1252, 1253 (D.C.1991) (determination of neglect based in part on child's being sent to school unkempt, tardy, and hungry).

8. While the evidence of drug use, in conjunction with the other deficiencies we have mentioned, allows us to conclude that the children were neglected under D.C.Code § 16–2301(9)(B), it does not, by itself, establish that the children were neglected under D.C.Code § 16–2301(9)(C). See part II–B of this opinion.

9. Appellant maintains that the government failed to prove that the neglect of the children was not "due to the lack of financial means," as subsection (9)(B) requires. It is true that the government did not, at any stage of these proceedings, introduce evidence about appellant's financial resources, which ordinarily would be an essential part of the government's burden in proving neglect. Here, however, appellant's repeated failure to get the children to school on time, to comb their hair, and to make sure that they bathed before going to school were not circumstances that money was required to remedy. Indeed, there was evidence that, when prodded, appellant made an effort to get the children to school on time and that her inattention to the

## B. Neglect under section 16–2301(9)(C)

■ The trial court also ruled that the children were neglected under D.C.Code § 16–2301(9)(C) because appellant was "unable to discharge her responsibilities to the children because of her drug addiction." The record, however, is devoid of evidence showing a causal relationship between appellant's drug addiction and the children's neglect. Something more than the mere existence of a drug problem was required in order to support a finding that, because appellant had one, her children were neglected as a consequence. See In re M.D., 758 A.2d 27, 32 n. 9 (D.C.2000) (it is insufficient for the government merely to show that the parent is a drug user; "the deleterious impact of that drug abuse" must also be shown); see also 1 ANN M. HARALAMBIE, HANDLING CHILD CUSTODY, ABUSE, AND ADOPTION CASES § 11.13, at 591 (1993) ("Generally, the mere existence of a parent's alcoholism or substance abuse does not constitute grounds for a [finding of neglect] unless the parent demonstrates an unwillingness or inability to properly care for the child").

While there was some indication that appellant's drug problems may have contributed to the neglect, that was insufficient, standing alone, to prove by a preponderance of the evidence [10] that she was "unable to discharge ... her responsibilities [to the children] because of ... physical or mental incapacity." D.C.Code § 16–2301(9)(C). This language is crucial: the statute, by using the words "because of," requires the government to prove a causal nexus between appellant's drug abuse and the neglected condition of her children. Without any evidence of such a nexus, the adjudication of neglect under subsection (9)(C) cannot be sustained.

## III

■ In addition to challenging the adjudication of neglect, appellant argues that the trial court erred when it committed her children to the custody of DHS.[11] She contends that even if all the allegations made at the neglect hearing were true, such commitment was still unwarranted and interfered with her liberty interests.[12]

children's needs resulted from her own personal habits or problems. For example, according to a social worker from Families Together, appellant "slept a lot and she isolated herself quite a bit." He testified that appellant needed to be more "hands on" with the children, instead of allowing them to do whatever they wanted to do, and that he had to remind her of the need to do laundry.

10. See D.C.Code § 16–2317(c)(2).

11. In her brief, appellant also asserts that the trial court abused its discretion in denying her counsel's request for a continuance during the disposition hearing. Counsel requested a continuance because the social report did not contain a plan for the children's care, and the social worker would probably have to consult with appellant before proposing one. Because it appeared that the social worker had not been able to discuss plans with the mother as a result of her unavailability and

because her attorney had no idea why appellant was not present for the hearing, the court denied the request. Under the circumstances, we find no abuse of discretion in that denial. Moreover, appellant fails to establish any prejudice resulting from the court's ruling. Without a showing of prejudice, this court will not find an abuse of discretion in the denial of a motion for continuance. See, e.g., Johnson v. United States, 398 A.2d 354, 367 (D.C.1979).

12. Appellant also argues, again without identifying any prejudice, that her due process rights were violated because she was not personally notified of the neglect proceedings. Appellant's counsel, however, told the court at the outset of the neglect hearing that appellant had notice of it, and in any event counsel was present at both the neglect hearing and the disposition hearing to represent appellant's interests. In these circumstances we find no due process violation.

While the decision to remove the children from their parent is a difficult one, we cannot discern any legal error or any abuse of discretion in the trial court's conclusion that the best interests of the children required their commitment to DHS. *See, e.g., In re A.B.E.,* 564 A.2d 751, 755 (D.C.1989) (while the rights of a natural parent to raise a child are subject to due process protection, "these rights are not absolute, and must give way before the child's best interests"); *In re M.M.M.,* 485 A.2d 180, 184 (D.C.1984) (parent "cannot insist that ... [she] has an interest which should prevail" over that of the child).

■ This court has often held that it will not reverse a decision to commit a neglected child unless the appellant can show that the trial court abused its discretion. *See, e.g., In re D.R.M.,* 570 A.2d 796, 803 (D.C.1990); *In re D.I.S.,* 494 A.2d 1316, 1323 (D.C.1985). In reviewing such decisions, our task is to ensure "that the trial court has exercised its discretion within the range of permissible alternatives, based on all relevant factors," and then to consider whether the decision is supported by "substantial" reasoning. *Id.* (citation omitted). Given the trial court's finding that appellant failed to give her children appropriate care, we conclude that the court properly assumed its role as *parens patriae* in order "to protect the best interests of the child[ren]" and provide the necessary relief. *In re J.J.Z.,* 630 A.2d 186, 193 (D.C.1993) (citations omitted).[13]

It is true that appellant, as a natural parent, has a "fundamental liberty interest" in the care and custody of her children which "does not evaporate simply because [she has] not been [a] model parent[] ...." *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The "paramount" concern in neglect proceedings, however, "is the child's welfare, and all other considerations, including the rights of a parent to the child, must yield to [the child's] best interests and well-being." *Davis v. Jurney,* 145 A.2d 846, 849 (D.C.1958).

Given the finding of neglect under section 16–2301(9)(B) and the evidence supporting that finding, the trial court did not abuse its discretion in deciding that the children should be committed to DHS. It was reasonable for the court to conclude that leaving them with appellant, when there was little or no evidence that anything was being done or would be done to improve their situation, would not have been in their best interest. *See In re J.J.Z.,* 630 A.2d at 193. While appellant clearly had an interest "in the care, custody and management" of her children, their well-being took precedence over her parental rights. *See Santosky,* 455 U.S. at 753, 102 S.Ct. 1388; *In re M.M.M.,* 485 A.2d at 184.

### IV

The adjudication of neglect under D.C.Code § 16–2301(9)(C) is vacated. The adjudication of neglect under D.C.Code § 16–2301(9)(B) and the order committing the children to the custody of DHS are both affirmed.

*So ordered.*

FARRELL, Associate Judge, concurring:

The trial judge found that appellant's eight-year history of cocaine and alcohol

---

13. Appellant failed to appear in court for either the hearing on the neglect petitions or the disposition hearing six weeks later. By the time of the latter hearing, it was evident that appellant needed further drug treatment.

Under all the circumstances, commitment of the children to DHS with a treatment plan and reunification of the family as a priority, as ordered by the trial court, was not an abuse of discretion.

use—including the fact that she tested positive for cocaine a month before the hearing—had contributed causally to the neglect of her children. I do not find that determination clearly erroneous (or "plainly wrong"), as does the court. The trier of fact could reasonably infer that appellant's pattern of indifference to the care and cleanliness of the children and her refusal to cooperate with the social workers was caused substantially by her inability to remain drug-and alcohol-free. D.C.Code § 16–2301(9)(C). Importantly, though, while not suggesting what additional proof of a causal relation would have sufficed, this court does not imply that *expert* testimony beyond that of a drug treatment counselor or social worker (such as testified in this case) is needed to establish causation in this context. With that assurance, at least, I join the court in upholding the adjudication of neglect under § 16–2301(9)(B).