**In re ANG.P. & And.P.;**
**C.P., Appellant.**

Nos. 11–FS–1584, 11–FS–1585.

District of Columbia Court of Appeals.

Argued April 10, 2013.

Decided July 25, 2013.[1]

---

1. On April 22, 2013, we issued an order vacating the judgment of the trial court in this case and indicated at that time that this formal opinion would follow.

Leslie J. Susskind argued the case for appellant. Carl Engstrand, Julie Case, Sadredin Mahmoudi, and Meredith Mathis, Student Attorneys, and Tanya Asim Cooper, Supervising Attorney, were on the brief, for appellant.

Stacy L. Anderson, Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Deobrah Cason Daniel filed a statement in lieu of brief for the father of And.P.

Before Washington, Chief Judge, McLEESE, Associate Judge, and BELSON, Senior Judge.

WASHINGTON, Chief Judge:

Appellant, C.P., appeals the trial court's determination that her daughters, Ang.P., age fourteen at the time of removal, and And.P., age five at the time of removal, were neglected under D.C.Code § 16–2301(9)(A)(ii) and (iii) (2001).[2] On appeal, appellant argues that there was insufficient evidence to find that the children were without proper parental care or control or that she was unable to discharge her responsibilities due to her physical incapacity.[3] For the following reasons, we conclude there is insufficient evidence to support a finding of neglect and vacate the trial court's holding.

## I. FACTS

Appellant is the mother of minor children Ang.P. and And.P., as well as Ant.P., her adult son who lives with her, and Ani.P., her adult daughter who frequently stays at her home. Appellant suffers from severe back pain due to a herniated disc in her back as a result of a car accident in 1997. The back injury was further aggravated by three subsequent car accidents that have left appellant permanently disabled since 2006. Appellant takes several strong pain medications to manage her back pain and receives assistance from a home health aide from 7 a.m. to 5 p.m. seven days a week. Appellant was also diagnosed as suffering from "organic mood syndrome," which is depression due to her medical condition, and was prescribed an antidepressant. However, her psychiatrist testified that appellant did not have any psychiatric impairments that would interfere with her parenting.

On August 10, 2010, Ant.P., appellant's adult son, called an ambulance for appellant because she complained of pain and numbness on the left side of her body. Appellant was taken to Georgetown Hospital and was accompanied by Ang.P. Dr. Van Wirt, who evaluated appellant, testi-

**2.** The term "neglected child" means a child:
\* \* \*
(ii) who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or custodian;
(iii) whose parent, guardian, or custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity.

D.C.Code § 16–2301(9)(A)(ii)–(iii) (2001).

**3.** Appellant also argues that Magistrate Judge Nooter erred in requiring her to have a "formal" arrangement whereby an adult would be available to care for her children should she become incapacitated by her pain medications. At oral arguments before the Court of Appeals, appellant argued that she did in fact have a Safety Plan. Because we are vacating the trial court's judgment of neglect, we need not address these arguments on appeal.

fied that appellant had taken a lot of pills to the point of being "oversedated" and was falling asleep with food in her mouth. While appellant was at the hospital, the Child and Family Services Agency ("CFSA") received a hotline report that And.P. had been left home alone. A police officer was dispatched to appellant's home, but found And.P. in the care of her adult brother, Ant.P.

The following day, CFSA social worker Judith Leitch was assigned to investigate the report from the previous night and visited appellant at the hospital. Leitch testified that appellant appeared very tired and angry, and was uncooperative, refusing to sign authorization forms for CFSA to access her medical records or to create a Safety Plan for the children. Leitch visited appellant two more times in August to assess appellant and her home. The first time, appellant answered the door after half an hour of knocking and appeared angry and exhausted. Leitch testified that appellant's home was somewhat messy and cluttered, but with adequate food and without major safety concerns. Leitch noted, however, that there was an unmarked bottle of pills on a windowsill and appellant seemed unconcerned that the children might ingest them. Leitch also noted that appellant occasionally nodded off during conversations, most notably slumping in her chair and slowly beginning to lose consciousness during the conversation she had on the phone with her sister and in person with Leitch about whether to sign the Safety Plan Leitch had prepared. Finally, Leitch was told by Ang.P. that appellant choked her on two occasions in the past year, leaving red marks that lasted for one or two days. Based on all of this information, Leitch decided that the children should be removed from appellant's care and that a neglect case be petitioned with the court.

At trial, Ang.P. testified that there had been times when appellant was either asleep or otherwise unable to care for the children, and there were no other adults in the home to watch her and her younger sister, And.P. Ang.P. testified that this occurred less than once a month. Ani.P., appellant's adult daughter, testified that appellant slept three to four hours during the day and a regular amount at night and that appellant's medications made her drowsy. However, she also testified that And.P. was never left home alone with her mother, but that Ang.P. or another adult was always there.

Darlene Richardson, a CFSA social worker who had worked with appellant earlier in 2010, also testified at trial. Richardson testified that the children were not up to date on their immunizations or regularly seeing their physician, that appellant had difficulty keeping current with her utility bills, and that appellant previously had difficulty bringing And.P. to school on time. Finally, during the trial, Magistrate Judge Nooter observed appellant fall asleep and be unable to be roused by her attorney for an extended period of time.

Judge Nooter found Ang.P. and And.P. to be neglected under D.C.Code § 16–2301(9)(A)(ii) and (iii) because they lacked proper parental care and control, and because appellant was unable to discharge her parental responsibilities due to her physical impairments. Judge Nooter based his neglect finding on evidence that appellant has a physical incapacity which requires her to take strong narcotics that cause her to become sleepy or practically unconscious and unable to function and care for her children, but has "no formal arrangement whereby someone is always available if needed to care for the children if [she] gets into this state of unconsciousness or incoherence." Judge Nooter found

that there were occasions when appellant had been incapacitated but no adults were in the home to take care of Ang.P. and And.P. Judge Nooter concluded that the children were "without proper parental care or control" at those times. Judge Nooter further concluded that the evidence that appellant had failed to keep the children updated on their immunizations, to get And.P. to school on time, and to keep current on utility bills contributed to a "total picture of a mother who ... has difficulty meeting all of [the children's]" needs due to her physical impairments. However, he found this evidence insufficient to support a finding of neglect. Judge Nooter also found that Ang.P.'s description of the "choking" events did not rise to the level of a finding of physical abuse under D.C.Code § 16–2301(9)(A)(i).

Associate Judge Neal Kravitz affirmed the magistrate judge's order, finding that, on many occasions, appellant had "no plan of alternative child care in place, either formal or informal, and that as a direct result of [appellant's] lack of planning, Ang.P. and And.P. have been left without proper parental care when [appellant's] medications rendered her incapacitated" and no other adults were home to supervise the children.

## II. LEGAL STANDARD

■ A child is neglected if he or she "is without proper parental care or control, subsistence, education as required by law, or other care necessary for his or her physical, mental or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or custodian." D.C.Code § 16–2301(9)(A)(ii). In addition, a child will be adjudicated neglected if his or her "parent, guardian, or custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hos-

pitalization, or other physical or mental incapacity." Id. § 16–2301(9)(A)(iii). A finding of neglect under (iii) requires a showing, by a preponderance of the evidence, of a causal nexus between the parent's mental or physical incapacity and his or her inability to provide proper parental care for the child. See In re E.H., 718 A.2d 162, 169 (D.C.1998).

■ In an appeal of an order of neglect, this court reviews the order of the associate trial judge, not the magistrate judge. In re C.L.O., 41 A.3d 502, 510 (D.C.2012). However, "we do not believe our powers of appellate review are so limited that, in reviewing the trial court's final order we may not look to the findings and conclusions of the fact finder on which that ruling is based." Id. (quoting In re C.A.B., 4 A.3d 890, 902 (D.C.2010)) (internal quotation marks omitted). When reviewing an adjudication of neglect, we "must consider the evidence in the light most favorable to the government, giving full play to the right of the judge, as the trier of fact, to determine credibility, weigh the evidence, and draw reasonable inferences." In re Am.V., 833 A.2d 493, 497 (D.C.2003) (quoting In re T.M., 577 A.2d 1149, 1151 (D.C.1990)) (internal quotation marks omitted). This court will reverse a neglect adjudication only for an error of law or if it is "plainly wrong or without evidence to support it." In re J.R., 33 A.3d 397, 402 (D.C.2011) (quoting In re G.H., 797 A.2d 679, 683–84 (D.C. 2002)) (internal quotation marks omitted).

## III. ANALYSIS

■ While we appreciate the concerns expressed by Magistrate Judge Nooter and Associate Judge Kravitz in finding that these children were neglected, we are satisfied that the facts found by the trial court do not give rise to a reasonable inference that Ang.P. and And.P. were

without proper parental care or that appellant was unable to discharge her responsibilities to her children because of her physical incapacity. Even though there was evidence in the record that appellant was often heavily medicated and drowsy, perhaps even practically unconscious for relatively short periods of time, the evidence, at worst, shows that her then fourteen-year-old daughter, Ang.P., was always present to care for her then five-year-old daughter, And.P., when she was not under the adult supervision of one of appellant's adult children. Thus, there is no evidence that And.P. was ever left alone without proper supervision. *See* Child and Family Services Agency Administrative Issuance No. 08–7 (December 24, 2008) (explaining that, depending upon the child's maturity, a child over the age of ten can be left alone and a child over twelve may babysit). There was no evidence that Ang.P. lacked the maturity or skill to care for And.P. during the periods their mother was asleep. Indeed, there was evidence that Ang.P. helped out with chores at home, was able to do her own laundry, could bathe and prepare And.P. for the day, and was able to prepare small meals. Nor was there evidence that the home in which the children and appellant were living was inherently dangerous. A social worker testified that it was somewhat dirty and cluttered, but that there were no major safety concerns. *Cf. In re Am.V.*, 833 A.2d at 496 (upholding neglect order where mother left the children alone frequently and "the home conditions were deplorable, disorganized, clothing all over the place ... the sheets in the bedroom [and] the pillow cases were filthy black.").

▮ While the government argues there were other concerns that may have informed the trial court's conclusion that the children were neglected, the magistrate judge made it clear that his decision was based only on his findings that the children were without proper parental support because of their mother's medical condition. However, even looking at the other concerns raised by the government, we are satisfied that there is insufficient evidence in this record to support a finding of neglect. The government does not cite to a case, and we have not found one, where a parent has been found to have left a child "without proper parental care ... necessary for ... her physical, mental, or emotional health"[4] or otherwise "failed to discharge her [parental] duties"[5] merely because a child's immunizations are not up to date, the parent has outstanding bills, or the parent has failed to ensure that his or her child regularly arrives on time for non-mandatory pre-kindergarten classes. *Compare In re P.B.*, 54 A.3d 660, 666–68 (D.C.2012) (affirming finding of neglect where one child missed so many elementary school days he was in danger of failing due to absenteeism, another child was not enrolled in school for a month, their home was incredibly dirty and unsanitary, the children had severely poor hygiene, and their mother consistently refused to cooperate with social workers); *In re Am.V.*, 833 A.2d at 498 (affirming finding of neglect when the children were chronically tardy to elementary school, were very unclean, were at times left unsupervised, their home was extremely disheveled and filthy, their mother was uncooperative with social workers, and their mother had a history of street drug abuse); *In re B.K.*, 429 A.2d 1331, 1332–34 (D.C.1981) (affirming finding of neglect where parents were under the influence of drugs and left child alone in street, parents' home was in disarray with dirty diapers

---

4. D.C.Code § 16–2301(9)(A)(ii).

5. D.C.Code § 16–2301(9)(A)(iii).

strewn about, human ·and animal feces on the floor, broken windows, and water leaking onto open wires). Thus, even considering these other factors, we believe that there was insufficient evidence to support a finding of neglect.

## IV.

For the foregoing reasons, this case was remanded to the trial court to vacate its neglect order.